1   DANIEL A. GAMER, ESQ. (CA SBN 42818)
    LAW OFFICES OF DANIEL A. GAMER
2   55 Professional Center Parkway, Ste H
    San Rafael, CA 94903
3   Telephone: (415) 472-6655
    Facsimile:  (415) 472-3940
4
    Attorney for Defendant
5   CALIFORNIA LAND TITLE OF MARIN

**FILED**

JUN 20 2008

RICHARD W. WIEKING
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
OAKLAND

6

7               UNITED STATES DISTRICT COURT

8             NORTHERN DISTRICT OF CALIFORNIA

9                     OAKLAND DIVISION

10

11  PATRICIA C. BARBERA,              )   Case No.: Case No. 4:08-cv-02677-SBA
                                      )   (prior related case number
12          Plaintiff,                )    3:08-cv-2677-PJH)
                                      )
13      vs.                           )
                                      )   NOTICE REGARDING EXHIBIT
14  WMC MORTGAGE CORPORATION, a )        ATTACHMENT TO REQUEST FOR
    California corporation, et al., aka )  JUDICIAL NOTICE BY DEFENDANT
15  WMCDirect; a California Business Entity;) CALIFORNIA LAND TITLE OF MARIN
    GE Consumer Finance, a unit of General ) IN SUPPORT OF MOTION TO DISMISS
16  Electric Company; Select Portfolio )   PLAINTIFF PATRICIA C. BARBERA'S
    Servicing Corp, a Utah Corporation; )  COMPLAINT
17  Fairbanks Holding Corporation, a  )
    Delaware Corporation; And Land Title )
18  Company of Marin, a California Business ) Date:  July 29, 2008
    Entity; Does 1 thru 100, inclusive, )  Time:  1:00 p.m.
19                                    )   Court: Hon. Saundra B. Armstrong
                                      )
20          Defendants.               )

21

22      The following Exhibits, which are attachments to the Request for Judicial Notice is in

23  paper form only and is being maintained in the case file in the Clerk's Office.

24          A         On July 23, 2004, plaintiff filed a complaint in the Superior Court of
                      California, County of San Francisco.  One of the defendants was CAL
25                    LAND.

---

Page 1 of 3
Motion to Dismiss Plaintiff Patricia C. Barbera's Complaint and Memorandum of
Points and Authorities by Defendant California Land Title of Marin
Case No. 4:08-cv-02677-SBA (prior related case number 3:08-cv-2677-PJH)

1  B       On September 3, 2004, WMC Mortgage Corp., WMC Finance Co.,
2          Apollo Management L.P., WMCDirect, and GE Consumer Finance
           removed the San Francisco Superior Court action to the Northern
3          District of California, San Francisco Division.

4  C.      On March 15, 2005, plaintiff filed a First Amended Complaint.

5  D.      On April 26, 2005, California Land Title of Marin filed an Opposition
6          to Plaintiff's Motion to File a Second Amended Complaint.

7  E.      On May 26, 2005, the Honorable Judge Saundra Brown Armstrong of
           the Northern District of California, San Francisco Division, made an
8          order regarding the motion to file a second amended complaint and
           struck those portions of the first amended complaint that added
9          allegations against California Land Title of Marin and ordered Plaintiff
10         to file a second amended complaint that removed the stricken
           allegations.

11 F.      On January 19, 2006, the Honorable Judge Saundra Brown Armstrong
12         of the Northern District of California, San Francisco Division,
           dismissed, with prejudice, all of Plaintiff's federal causes of action
13         against WMC Mortgage.

14

15         The reason for manual filing is the voluminous nature of the Exhibits and the Exhibits

16 are available through PACER in Case No. C-04-3738 SBA.

17
   Dated: June 19, 2008
18
                                    /s/ Daniel A. Gamer
19                                  Daniel A. Gamer
                                    Attorney for Defendant
20                                  California Land Title of Marin

21

22         I, Daniel A. Gamer, am the ECF User whose ID and password are being used to file
   this Notice Regarding Exhibit Attachment by Defendant California Land Title of Marin.
23

24                                  /s/ Daniel A. Gamer
                                    Daniel A. Game
25

Page 2 of 2
Motion to Dismiss Plaintiff Patricia C. Barbera's Complaint and Memorandum of
Points and Authorities by Defendant California Land Title of Marin
Case No. 4:08-cv-2677-SBA (prior related case number 3:08-cv-2677-PJH)

# EXHIBIT "A"

JOHN G. WARNER (CA State Bar No. 046123)
Law Office of John G. Warner
21 Tamal Vista Blvd., Suite 196
Corte Madera, CA 94925
Telephone: (415) 924-2640
Facsimile: (415) 927-0608
Email: warnerwest@aol.com

Attorney for Plaintiff
Patricia C. Barbera

ENDORSED
F I L E D
San Francisco County Superior Court

JUL 2 3 2004

GORDON PARK-LI, Clerk
BY: _____JUN P. PANELO_____
                              Deputy Clerk

SUPERIOR COURT OF CALIFORNIA

COUNTY OF SAN FRANCISCO

UNLIMITED CIVIL DIVISION

CLASS ACTION

CASE MANAGEMENT CONFERENCE
PLAN I  DEC 2 3 2004  9:00,
DEPARTMENT 212

Patricia C. Barbera,

        Plaintiff,

        vs.

WMC Mortgage Corp., a
California Corporation; WMC
Finance Co.; Apollo Management
L.P.; WMCDirect; GE Consumer
Finance, a unit of General
Electric Company; Fairbanks
Capital Corp., a Utah
Corporation; Fairbanks Capital
Holding Corp., a Delaware
Corporation; California Land
Title Company of Marin, a
California business entity;
Does 1 through 100, inclusive,

        Defendants.

Case No.  CGC 04 433269

COMPLAINT TO BAR PREDATORY
LENDING AND OTHER UNFAIR BUSINESS
PRACTICES; FOR REMEDIES UNDER
CALIFORNIA CONSUMERS LEGAL
REMEDIES ACT AND VARIOUS FEDERAL
HOME LOAN PROTECTION STATUTES;
MONETARY DAMAGES FOR FRAUD, FOR
BREACH OF CONTRACT, ELDER ABUSE,
AND USURY; AND FOR RESCISSION OF
HOME LOAN MORTGAGE

CLASS ACTION

Demand for Jury Trial

Type of Case:
        Unfair Business Practice

## INTRODUCTION

1. Plaintiff Patricia Barbera brings this action on behalf
of herself, and separately on behalf of affected members of the
general public, to challenge the unjust, unlawful, unfair and
fraudulent business practices of defendants in the manner in

1  which they handle mortgage loans on residential property in

2  California, as is more fully alleged herein.  Plaintiff seeks

3  compensatory damages, punitive damages, statutory penalties,

4  rescission, restitution, disgorgement of profits, attorney's

5  fees, and costs.  In support thereof, plaintiff hereby complains

6  and alleges as follows:

7

8                          PARTIES

9      2. Plaintiff Patricia C. Barbera ("plaintiff") is a 73-year

10  old individual residing at all material times in the County of

11  Marin, California.

12     3. At all material times, defendant WMC Mortgage Corp.

13  ("WMC"), formerly known as WMC Finance Co., was and is an entity

14  formed by Apollo Management L.P. and an individual named Leon

15  Black and others who acquired Weyerhaeuser Mortgage Company and

16  Weyerhaeuser Insurance Services.  WMC is a California corporation

17  with its corporate headquarters in Woodland Hills, California.

18  It operates throughout California making loans on residential

19  property and also acting as the administrator for those loans.

20  WMC also operates defendant WMCDirect, WMC's online nationwide

21  business services website for mortgage brokers.  WMC claims that

22  "since its launch, in June 1999, online loan submissions have

23  totaled more than $31 billion."

24     4. On June 14, 2004, defendant GE Consumer Finance Co., the

25  consumer lending unit of the General Electric Company (NYSE: GE)

26  purchased defendant WMC Finance Co., including defendants WMC and

27  WMCDirect, from affiliates of defendant Apollo Management L.P.

28     5. At all material times, defendant Fairbanks Capital Corp.

1  was and is a Utah corporation that acted on behalf of WMC as the

2  servicer of WMC's loans including WMC's loan to plaintiff.

3      6. At all material times, defendant Fairbanks Capital

4  Holding Corp. was and is a Delaware corporation which fully owns

5  and controls as a subsidiary defendant Fairbanks Capital Corp.

6      7. At all material times, defendant California Land Company

7  of Marin was and is a title company with its principal business

8  office in Marin County, California.

9      8. Plaintiff is ignorant of the true names and capacities of

10 defendants sued herein as Does 1 through 100, and therefore

11 plaintiff sues these defendants by such fictitious names.

12 Plaintiff is informed and believes and thereon alleges that each

13 of the fictitiously named defendants, including any such

14 defendants that may be the agents, representatives, or parent or

15 subsidiary corporations of the named defendants, is responsible

16 in some manner for the occurrences, events, transactions, and

17 damages alleged herein, and that plaintiff's damages as

18 hereinafter set forth were proximately caused by the Doe

19 defendants.  Plaintiff will amend her complaint to state the true

20 names and capacities of the Doe defendants when they have been

21 ascertained.

22     9. Plaintiff is informed and believes and thereon alleges

23 that each of the defendants, including the Doe defendants, acted

24 in concert with each and every other defendant, and intended to

25 and did participate in the events, acts, practices and courses of

26 conduct alleged herein, and each was a proximate cause of the

27 damages and statutory violations alleged herein.  At all times

28 herein mentioned, each defendant was the agent or employee of

1   each of the other defendants and was acting within the course and

2   scope of such agency or employment.

3       10. Plaintiff did not discover her causes of action against

4   defendants Fairbanks Capital Corp., Fairbanks Capital Holding

5   Corp., and California Land Title Company until approximately ten

6   months ago when defendant WMC produced documents that plaintiff

7   had been requesting for nearly a year pursuant to written

8   discovery.  These documents show that the Fairbanks defendants

9   subsequently became the servicer for plaintiff's loan and that

10  California Land Title Company of Marin had improperly processed

11  escrow documents required for a loan that plaintiff had obtained

12  from WMC.

13      11. Each of the following causes of action arises from a

14  home loan that WMC made to plaintiff that was intended primarily

15  for personal, family or household use.  This loan was a

16  "federally related mortgage loan" within the meaning of the Real

17  Estate Settlement Procedures Act ("RESPA").

18      12. Plaintiff is informed and believes, and based thereon

19  alleges, that WMC is a major "high cost" residential mortgage

20  lender which has made more than ten billion dollars in

21  residential mortgage loans secured primarily by first mortgage

22  liens on personal residences in the State of California.

23  Plaintiff is further informed and believes, and based thereon

24  alleges, that WMC has been in the business of making residential

25  mortgage loans and home equity loans as a "high-cost" predatory

26  lender for many years, primarily in the State of California.

27

28

1

2                         SUMMARY OF FACTS

3       13. In June, 1997, plaintiff was in a desperate financial

4  situation.  She had pending against her a foreclosure action

5  initiated by another lender with respect to her personal

6  residence at 24 Caribe Isle, Novato, California.  To avoid that

7  foreclosure, plaintiff obtained a loan from WMC in the amount of

8  $322,500 at an annual percentage rate of 12.2573%.

9  .       14. On June 12, 1997, plaintiff executed loan documents at

10  California Land Title Company of Marin.  During the close of

11  escrow, defendants failed to provide to plaintiff two written

12  notices of plaintiff's right to rescind within three days of

13  closing, and defendants failed to prepare and deliver accurate

14  disclosures that were mandated under what is called TILA (the

15  Truth in Lending Act, 15 U.S.C. sec. 1601. et. seq.) for the

16  close of escrow in a home mortgage transaction.  Plaintiff

17  further alleges in this respect that defendants' failure to

18  provide these right to rescind notices and to prepare and deliver

19  properly required close of escrow documents as required by TILA

20  was and continues to be a pattern of practice routinely carried

21  out by defendants to defraud or to harm home loan borrowers.

22  These practices caused WMC's loan agreement with plaintiff to be

23  void.

24       15. On May 19, 1998, WMC notified plaintiff that it had not

25  received proof of her renewal of the fire insurance policy on

26  plaintiff's home.  Despite plaintiff's numerous telephone calls

27  to WMC and despite verification provided to WMC by plaintiff's

28  insurance company that a copy of the insurance policy had been

1  mailed to WMC, WMC proceeded to force-place a substitute policy

2  from another fire insurance company at plaintiff's expense.  On

3  October 13, 1998, plaintiff received a copy of the force-placed

4  policy, which reflected a premium of $2,242, nearly three times

5  the annual premium for plaintiff's own policy of $820, which

6  plaintiff had been regularly paying.

7      16. In January, 1999, after numerous telephone calls to WMC,

8  plaintiff received a letter dated January 19, 1999, advising her

9  that WMC had received recent confirmation of insurance coverage

10  for plaintiff's property and that WMC had canceled both the

11  force-placed insurance and its charge to plaintiff for that

12  policy.

13      17. Unbeknownst to plaintiff and contrary to its

14  representation, WMC failed to cancel the $2,242 charge to

15  plaintiff's account and in fact continued to impose an annual

16  charge on plaintiff's account for this insurance without

17  notifying plaintiff.

18      18. On August 19, 1999, WMC served on plaintiff a ten-day

19  default notice listing amounts alleged due on the mortgage.  The

20  amounts set forth in the default notice were false.  They

21  exceeded the amounts due under the note by a substantial sum.

22  Using these excessive amounts as a pretext, on November 5, 1999,

23  WMC and its agent Millennium Foreclosure Services, LLC

24  ("Millennium"), served plaintiff with a notice of default, in the

25  amount of $42,114.79.

26      19. On December 4, 1999, plaintiff sent a detailed letter to

27  both WMC and Millennium by facsimile.  In her letter, which is

28  "qualified written request" within the meaning of RESPA at

1  subsection (e) of 12 U.S.C. §2605, plaintiff denied that she owed

2  WMC the amount shown in Millennium's notice of default and she

3  renewed her previous oral requests to WMC, starting in June,

4  1999, for an accurate accounting, as WMC's monthly payment coupon

5  sent to plaintiff contained erroneous accounting debits and

6  credits.

7      20. Subsection (e) of 12 U.S.C. §2605 of RESPA requires a

8  loan servicer to acknowledge receipt of a "qualified written

9  request" within 20 days and to respond to such a request within

10  60 days, excluding legal public holidays, Saturdays, and Sundays.

11      21. From June, 1999, until March 1, 2002, WMC violated RESPA

12  by failing to respond to plaintiff's oral requests and also by

13  failing to acknowledge or to respond within the statutory limits

14  to plaintiff's "qualified written requests."  Not only did

15  defendants fail to respond to plaintiff's oral and written

16  requests, they continued to bill plaintiff for improper charges,

17  and they also attempted to carry out a foreclosure sale of

18  plaintiff's home based upon these improper charges.  Plaintiff

19  further alleges that defendants' failure to deliver required

20  right to rescind notices and to prepare and process properly

21  other required close of escrow documents as required by TILA was

22  and continues to be a pattern of practice routinely carried out

23  by defendants to defraud or to harm home loan borrowers.

24      22.  From the inception of this loan in June 1997 until

25  December 2003, WMC failed to produce documents that plaintiff had

26  been requesting for nearly a year pursuant to written discovery.

27  When they were finally produced, these documents showed that the

28  Fairbanks defendants subsequently became the servicer for

1 | plaintiff's loan.  Unbeknownst to plaintiff, WMC failed to
2 | disclose that this loan servicing had been transferred to the
3 | Fairbanks defendants.

4 |     23.  On February 11, 2000 plaintiff received from Millennium
5 | a Notice of Trustee's Sale recorded on February 7, 2000, citing a
6 | sale date of March 2, 2000.  The sale amount listed in the Notice
7 | was $372,316.39.

8 |     24. On February 27, 2000, plaintiff sent via facsimile to
9 | WMC a copy of a telegram advising WMC that it had failed to
10 | respond to plaintiff's previous letters, had failed to provide an
11 | accurate accounting, and had violated various laws and
12 | regulations.

13 |     25. On March 1, 2000, WMC supplied plaintiff with a
14 | statement purportedly showing the history of payments on the
15 | loan, but this statement was incomprehensible, as were WMC's
16 | monthly loan statements.

17 |     26.  On March 2, 2000, plaintiff notified WMC that she had
18 | filed a Chapter 13 bankruptcy petition, and she verified that the
19 | foreclosure had been canceled.  On April 11, 2000, in violation
20 | of the automatic bankruptcy stay, WMC filed a Notice of Trustee's
21 | Sale scheduled for May 10, 2000.

22 |     27. This mortgage loan transaction with WMC was a consumer
23 | credit transaction entered into by plaintiff for personal,
24 | household or family purposes.

25 |     28. Plaintiff is informed and believes, and based thereon
26 | alleges that the acts and the conduct of the defendants alleged
27 | herein above are a violation of Civil Code § 1770, the Consumers
28 | Legal Remedies Act ("CLRA"), including subsections (a)(8), (9),

1  (13), (14), (16) and (19), respectively.

2      29. Plaintiff has suffered substantial economic damage, and

3  other general and special damages, as a result of the herein-

4  mentioned violations of the Consumers Legal Remedies Act, in an

5  amount to be proven at time of trial.

6      30. Plaintiff is informed and believes, and based thereon

7  alleges, that defendants continue to engage in the above-

8  described deceptive practices, and that unless they be enjoined

9  from doing so by this court they will continue to do so, all to

10  the damage of its customers who will enter into home loan

11  mortgage transactions with the defendants.

12      31. The aforementioned violations of the Civil Code by

13  defendants were willful, despicable, cruel unjust, malicious,

14  fraudulent or oppressive, or were committed in conscious

15  disregard of the consequences to the plaintiff and other

16  consumers, thereby entitling plaintiff to punitive damages

17  pursuant to Civil Code §3294 and other California and federal

18  statutes.

19

20                      **FIRST CAUSE OF ACTION**

21                  (Unlawful predatory lending practices)

22      32. Plaintiff realleges and incorporates herein by reference

23  the allegations set forth in Paragraphs 1 through 31 above as if

24  fully alleged herein.

25      33. Defendant WMC has consistently engaged in what is called

26  predatory lending practices, that is, it prays upon borrowers who

27  have poor credit history or who have limited financial resources

28  or who are elderly.  In doing so, WMC takes advantage of these

1  vulnerable borrowers by demanding that such borrowers, including,

2  for example, plaintiff, pay excessively high interest rates and

3  other excessive or unnecessary lending charges which are not

4  warranted by the particular circumstances of such borrowers.  In

5  addition, defendant WMC engaged in pervasive and egregious

6  account practices, which, combined with its failure to respond to

7  "qualified written requests," enabled WMC to act within impunity

8  on a scale heretofore not recognized in California lending

9  practices.

10      34. These predatory lending practices are consistently

11  followed by WMC and constitute an unfair business practice under

12  what is called §17200 of the California Business & Professions

13  Code.

14      35. Wherefore, plaintiff, on behalf of herself and also on

15  behalf of the people of the State of California, seeks whatever

16  appropriate remedies would be available under §17200, including

17  without limitation statutory penalties, restitution, disgorgement

18  of profits, injunctive relief, and attorney's fees, and to bar

19  WMC from conducting business in the California home loan market.

20

21                    SECOND CAUSE OF ACTION

22                  (Consumer Legal Remedies Act)

23      36. Plaintiff realleges and incorporates herein by reference

24  the allegations set forth in Paragraphs 1 through 35 above as if

25  fully alleged herein.

26      37. Plaintiff is informed and believes, and thereon alleges,

27  that the acts and conduct of WMC as alleged in this complaint

28  violate various provisions of what is called the California

1  Consumers Legal Remedies Act, which is set forth in Civil Code

2  §1750, et. seq.

3      38. As a proximate result of said violations, plaintiff has

4  suffered substantial economic damages and other general and

5  special damages in an amount to be proven at time of trial.

6      39. Wherefore, plaintiff seeks whatever appropriate remedies

7  would be available under §1750, including without limitation

8  damages, statutory penalties, restitution, injunctive relief, and

9  attorney's fees.

10

11                      **THIRD CAUSE OF ACTION**

12                     (Truth in Lending Act)

13      40. Plaintiff realleges and incorporates herein by reference

14  the allegations set forth in Paragraphs 1 through 39 above as if

15  fully alleged herein.

16      41. Plaintiff is informed and believes, and thereon alleges,

17  that the acts and conduct of defendants as alleged in this

18  complaint violate various provisions of what is called the Truth

19  in Lending Act, 15 U.S.C. §1601 et. seq. ("TILA"); Regulation Z,

20  and what is called the Home Ownership and Equity Protection Act,

21  15 U.S.C §1639 ("HOEPA").

22      42. These violations include, without limitation, the

23  failure to provide to plaintiff the mandated written three-day

24  right to cancel notice prior to the presumed consummation date of

25  June 11, 1997. In addition, they failed to provide accurate

26  disclosures, as mandated by these statutes.

27      43. As a proximate result of said TILA, Regulation Z, and

28  HOEPA violations, plaintiff has suffered substantial economic

1   damages and other general and special damages in an amount to be

2   proven at time of trial, and she is entitled to rescission of her

3   loan transaction with WMC.

4       44. Wherefore, plaintiff seeks damages and whatever other

5   remedies are available under TILA, Regulation Z, and HOEPA,

6   including without limitation rescission of her loan transaction

7   with WMC.

8

9   **FOURTH CAUSE OF ACTION**

10  (Real Estate Settlement Procedures Act)

11      45. Plaintiff realleges and incorporates herein by reference

12  the allegations set forth in Paragraphs 1 through 44 above as if

13  fully alleged herein.

14      46. Plaintiff is informed and believes, and thereon alleges,

15  that the acts and conduct of defendants as alleged in this

16  complaint violate various provisions of what is called the Real

17  Estate Settlement Procedures Act, 12 U.S.C. §2601, et. seq.

18  ("RESPA").

19      47. These violations include without limitation kickbacks,

20  referral fees, unnecessary escrow accounts for taxes and

21  insurance, improper or inaccurate reporting to credit borrowers,

22  failure to disclose the transfer of the servicing, failure to

23  respond to a "qualified written request", failure to "receive

24  payments from a borrower" and "making the payments of principal

25  and interest as may be required pursuant to the terms of the

26  loan" and other home mortgage lending practices that tend to

27  cause excessive borrowing costs for home loans.

28      48.  As a proximate result of said RESPA violations,

1  plaintiff has suffered substantial economic damages and other

2  general and special damages in an amount to be proven at time of

3  trial, and she is entitled to rescission of her loan transaction

4  with WMC.

5      49. Wherefore, plaintiff seeks damages and whatever other

6  remedies are available under RESPA.

7

8                      **FIFTH CAUSE OF ACTION**

9                      (Debt Collection Violations)

10     50.   Plaintiff realleges and incorporates herein by

11  reference the allegations set forth in Paragraphs 1 through 49

12  above as if fully alleged herein.

13     51. Plaintiff is informed and believes, and thereon alleges,

14  that the acts and conduct of defendants as alleged in this

15  complaint violate various provisions of what is called the

16  Federal Fair Debt Collections Practices Act, 15 U.S.C. §1692 et.

17  seq., including, for example, improper or inaccurate reports to

18  credit borrowers.  In addition, it is a violation of Real Estate

19  Settlement Procedures Act, 12 U.S.C. §2605(3)(d), i.e.,

20  protection of credit rating. Servicer may not provide information

21  regarding any overdue payment to any consumer reporting agency.

22     52. As a proximate result of said violations, plaintiff has

23  suffered substantial economic damages and emotional distress and

24  other general and special damages in an amount to be proven at

25  time of trial.

26     53. Wherefore, plaintiff seeks whatever remedies may be

27  available under this federal debt collections statute, including

28  without limitation compensatory damages, statutory damages,

1  statutory penalties and attorney's fees.

2

3                          SIXTH CAUSE OF ACTION

4                            (Lending Fraud)

5      54. Plaintiff realleges and incorporates herein by reference

6  the allegations set forth in Paragraphs 1 through 53 above as if

7  fully alleged herein.

8      55. At the time WMC made to plaintiff the home loan which is

9  the subject of this complaint, WMC made various representations

10 to plaintiff, including without limitation that WMC would service

11 plaintiff's loan honestly and fairly and accurately, using

12 accurate accounting procedures, and would send to plaintiff

13 accurate statements regarding loan payments, loan balances,

14 escrow charges, and other loan charges stated in connection with

15 WMC's loan to plaintiff.

16     56. Said representations were false.  In truth, as part of

17 its predatory lending practices WMC intended to misstate the

18 amounts due under its loan to plaintiff in order to obtain

19 greater compensation under the loan than was permitted either by

20 the loan contract or by the various statutory consumer

21 protections that have been enacted to prevent predatory lending

22 practices.

23     57. Plaintiff relied upon the representations of WMC, as

24 alleged above, and plaintiff's reliance was reasonable in view of

25 the fact that at the time of this loan she was led to believe by

26 WMC that WMC was a highly ethical and honest home loan lender.

27     58. As a proximate result of said lending fraud, plaintiff

28 has suffered substantial economic damages and other general and

1    special damages in an amount to be proven at time of trial, and

2    she is entitled to rescission of her loan transaction with WMC.

3        59.  Wherefore, plaintiff seeks both economic and non-

4    economic damages in such amounts as may be allowed at time of

5    trial.

6

7                      SEVENTH CAUSE OF ACTION

8                        (Breach of Contract)

9        60. Plaintiff realleges and incorporates herein by reference

10   the allegations set forth in Paragraphs 1 through 59 above as if

11   fully alleged herein.

12       61. On or about June 1997, plaintiff entered into a written

13   contract with defendant WMC whereby WMC agreed to loan plaintiff

14   the sum of $322,500 secured by a mortgage recorded against

15   plaintiff's home in Marin County, California.  In that home loan

16   agreement, WMC promised, _inter alia_, that so long as plaintiff

17   timely made monthly payments, plaintiff would have thirty years

18   in which to repay all sums due under the loan.

19       62. WMC breached this home loan agreement by declaring the

20   loan in default, by demanding that plaintiff pay charges that

21   were not due under the loan, and by attempting to exercise

22   foreclosure rights given to WMC in the mortgage securing loan,

23   even though WMC did not have the right to exercise such

24   foreclosure rights.

25       63. As a proximate result of WMC's breach of this home loan

26   agreement as alleged above, plaintiff has sustained compensatory

27   damages in an amount to be determined at time of trial,

28   including, without limitation, damages she sustained when she was

1   forced to seek bankruptcy court protection.

2       64. Wherefore, plaintiff seeks compensatory damages in such

3   amounts as may be allowed by the court at time of trial.

4

5                       EIGHTH CAUSE OF ACTION

6                          (Elder Abuse)

7       65. Plaintiff realleges and incorporates herein by reference

8   the allegations set forth in Paragraphs 1 through 59 above as if

9   fully alleged herein.

10      66. The acts and practices of defendants as alleged in this

11  complaint constitutes what is called under California law elder

12  abuse as that term is used in Welfare & Institutions Code §15600

13  et. seq.

14      67. Elder abuse occurred in the present case because

15  plaintiff is a person 65 years of age or older residing in

16  California; defendants engaged in conduct which resulted in

17  plaintiff being subjected to financial abuse; and as a proximate

18  result of the conduct of defendants, plaintiff sustained injury,

19  damage, loss or harm to plaintiff's home in Marin County,

20  California.

21      68. Wherefore, as a proximate result of said elder abuse,

22  plaintiff seeks economic and non-economic damages in such amounts

23  as such may be allowed at time of trial.

24

25                      NINTH CAUSE OF ACTION

26                        (Usury Damages)

27      69. Plaintiff realleges and incorporates herein by reference

28  the allegations set forth in Paragraphs 1 through 68 above as if

COMPLAINT TO BAR PREDATORY LENDING AND OTHER UNFAIR BUSINESS PRACTICES - 16

1  fully alleged herein.

2      70. The interest rate charged by defendants for the WMC loan

3  which is the subject of this complaint was usurious as that term

4  is defined and applied by the California Constitution.

5      71. Wherefore, plaintiff is entitled to such damages as the

6  usury laws of California may allow.

7

8                    TENTH CAUSE OF ACTION

9                         (Rescission)

10     72. Plaintiff realleges and incorporates herein by reference

11 the allegations set forth in Paragraphs 1 through 71 above as if

12 fully alleged herein.

13     73. At the time defendant WMC made to plaintiff the home

14 loan which is the subject of this complaint, defendant WMC made

15 various representations to plaintiff, including without

16 limitation that defendant WMC would service plaintiff's loan

17 honestly and fairly and accurately, using accurate accounting

18 procedures, and would send to plaintiff accurate statements

19 regarding loan payments, loan balances, escrow charges, and other

20 loan charges stated in connection with defendant WMC's loan to

21 plaintiff.

22     74. Said representations were false.  In truth, as part of

23 its predatory lending practices defendant WMC intended to

24 misstate the amounts due under its loan to plaintiff in order to

25 obtain greater compensation under the loan than was permitted

26 either by the loan contract or by the various statutory consumer

27 protections that have been enacted to prevent predatory lending

28 practices.

75. Plaintiff relied upon the representations of defendant WMC, as alleged above, and plaintiff's reliance was reasonable in view of the fact that at the time of this loan she was led to believe by defendant WMC that WMC was a highly ethical and honest home loan lender.

76. As a proximate result of said misrepresentations, plaintiff has suffered substantial economic damages and emotional distress and other general and special damages in an amount to be proven at time of trial.

77. Wherefore, plaintiff seeks rescission of her loan transaction with WMC Mortgage, including without limitation cancellation of the loan and the rescission of the loan contract and rescission of any other documents related to or made a part of the loan contract, and she also seeks restitution of all monies she has paid to WMC which under California or federal law WMC was not entitled to receive.

## PUNITIVE DAMAGES

78. Plaintiff realleges and incorporates herein by reference the allegations set forth in paragraphs 1 through 70 above as if fully alleged herein.

79. As a proximate result of the statutory violations and the fraud and the usury violations and the elder abuse alleged in this complaint, plaintiff is entitled to an award of punitive damages pursuant to the provisions of Civil Code §3294.

## PRAYER

a. Plaintiff seeks both economic and non-economic

1  compensatory damages to the extent allowed by any of the causes

2  of action alleged in this complaint.

3      b. Plaintiff seeks statutory penalties to the extent allowed

4  by any of the causes of action alleged in this complaint.

5      c. Plaintiff seeks rescission and restitution and

6  disgorgement to the extent allowed by any of the causes of action

7  alleged in this complaint.

8      d. Plaintiff seeks elder abuse and usury damages to the

9  extent allowed by any of the causes of action alleged in this

10  complaint.

11      e. Plaintiff seeks punitive damages to the extent allowed by

12  any of the causes of action alleged in this complaint.

13      f. Plaintiff seeks attorney's fees to the extent allowed by

14  any of the causes of action alleged in this complaint.

15      g. Plaintiff seeks costs of suit to the extent allowed by

16  any of the causes of action alleged in this complaint.

17      h. Plaintiff seeks such other and further relief that the

18  court may allow.

19

20

21

22  July 22, 2004

John G. Warner
Attorney for Plaintiff
Patricia C. Barbera

23

24

25

26

27

28

COMPLAINT TO BAR PREDATORY LENDING AND OTHER UNFAIR BUSINESS PRACTICES – 19

# EXHIBIT "B"

1  MICHAEL J. AGOGLIA (CA SBN 154810)
   STEPHEN E. PAFFRATH (CA SBN 195932)
2  MORRISON & FOERSTER LLP
   425 Market Street
3  San Francisco, California  94105-2482
   Telephone: (415) 268-7000                    **RECEIVED**
4  Facsimile: (415) 268-7522
                                                SEP 0 8 2004
5  Attorneys for Defendant
   WMC MORTGAGE CORP.; WMC FINANCE CO.; APOLLO
6  MANAGEMENT L.P.; WMCDIRECT; AND GE CONSUMER
   FINANCE

7

8                        UNITED STATES DISTRICT COURT

9                      NORTHERN DISTRICT OF CALIFORNIA

10

11

12  Patricia C. Barbera,                        Case No.

13               Plaintiff,

14        v.                                    C 04   3738

15  WMC Mortgage Corp., a California Corporation;
    WMC Finance Co.; Apollo Management L.P.;      **NOTICE OF REMOVAL OF**
16  WMCDirect; GE Consumer Finance, a unit of     **ACTION PURSUANT TO**
    General Electric Company; Fairbanks Capital   **28 U.S.C. § 1441 (B) AND (C)**
17  Corp., a Utah Corporation; Fairbanks Capital
    Holding Corp., a Delaware Corporation;        **(FEDERAL QUESTION**
18  California Land Title Company of Marin, a      **JURISDICTION)**
    California business entity; Does 1 through 100,
19  inclusive.,

20               Defendants.

21

22        TO THE CLERK OF THE UNITED STATES DISTRICT COURT AND PLAINTIFF:

23        PLEASE TAKE NOTICE that defendants WMC Mortgage Corp., WMC Finance Co.,

24  Apollo Management L.P., WMCDirect, and GE Consumer Finance (collectively the "Removing

25  Defendants") hereby remove to this Court the state court action described below.

26        1.      On July 23, 2004, an action was commenced in the Superior Court of the State of

27  California in and for the County of San Francisco, entitled *Barbera v. WMC Mortgage Corp., et*

28

    NOTICE OF REMOVAL                    1

1    *al.*, Case No. CGC-04-433269. A copy of the complaint in that action (the "Complaint") is

2    attached hereto as Exhibit A.

3          2.     Defendant WMC Finance Co. received a copy of the Summons and Complaint by

4    mail on August 6, 2004. A copy of the Notice of Service of Process is attached hereto as

5    Exhibit B. None of the other Removing Defendants received a copy of the Complaint prior to

6    August 4, 2004.

7          3.     This Notice of Removal is timely filed as required by 28 U.S.C. § 1446(b) since it

8    is filed within thirty days after service on the defendants of a copy of the Summons and the

9    Complaint commencing the action.

10         4.     Plaintiff served defendant California Land Title Company of Marin ("California

11    Land Title") with the Complaint and Summons on August 12, 2004. California Land Title has

12    informed the Removing Defendants that it consents to the removal of the action to this Court. A

13    copy of California Land Title's consent to removal is attached hereto as Exhibit C.

14         5.     The official docket in the state court proceeding does not reflect as of this date that

15    either defendant Fairbanks Capital Corp. or defendant Fairbanks Capital Holding Corp were

16    served with the Summons and Complaint. A copy of the state court docket is attached hereto as

17    Exhibit D.

18         6.     The Complaint purports to state claims against defendants, *inter alia*, for alleged

19    violations of the Truth in Lending Act, 15 U.S.C. § 1601, *et seq.* ("TILA"), the Home Ownership

20    and Equity Protection Act, 15 U.S.C. § 1639 ("HOEPA"), and the Real Estate Settlement

21    Procedures Act, 12 U.S.C. § 2601, *et seq.* ("RESPA").

22         7.     Removal is therefore proper pursuant to 28 U.S.C. § 1441(b) and (c).

23         8.     Defendants have taken no action in the state court proceeding, and no further

24    proceedings have occurred in this matter in the state court.

25         9.     Promptly after the filing of this Notice of Removal, the Removing Defendants

26    shall give written notice to Plaintiff of the filing of this Notice and shall, pursuant to 28 U.S.C. §

27    446(d), file a copy of this Notice with the Clerk of the Superior Court of the State of California

28    for the County of San Francisco.

NOTICE OF REMOVAL                    2

10.    Pursuant to 28 U.S.C. § 1446(a), the Removing Defendants file this Notice of Removal in this district and division in which the Action was filed. Under this Court's Local Rules, the Action should be assigned to the San Francisco or the Oakland Division of the Northern District of California because the cause of action allegedly arose in Marin County, California. Local Rule 3-2(d).

11.    The Removing Defendants are represented by the undersigned attorney who certifies, pursuant to Rule 11 of the Federal Rules of Civil Procedure, that the foregoing is true and correct.

Dated: September 3, 2004

MICHAEL J. AGOGLIA
MORRISON & FOERSTER LLP

By: _____
        Michael J. Agoglia

Attorneys for Defendant
WMC MORTGAGE CORP., WMC
FINANCE CO., APOLLO
MANAGEMENT L.P., WMCDIRECT,
AND GE CONSUMER FINANCE

sf-1772165

NOTICE OF REMOVAL                                    3

# EXHIBIT "C"

1   JOHN G. WARNER (CA State Bar No. 046123)
    Law Office of John G. Warner
2   21 Tamal Vista Blvd., Suite 196
    Corte Madera, CA 94925
3   Telephone: (415) 924-2640
    Facsimile: (415) 927-0608
4   Email:  warnerwest@aol.com

5   Attorney for Plaintiff
    Patricia C. Barbera
6

7              IN THE UNITED STATES DISTRICT COURT

8          FOR THE NORTHERN DISTRICT OF CALIFORNIA

9                    OAKLAND DIVISION

10

11  Patricia C. Barbera,                  Case No. C-04-03738-SBA

12       Plaintiff,
                                          FIRST AMENDED COMPLAINT TO BAR
13           vs.                          PREDATORY LENDING AND OTHER
                                          UNFAIR BUSINESS PRACTICES; FOR
14                                        REMEDIES UNDER CALIFORNIA
                                          CONSUMERS LEGAL REMEDIES ACT AND
15  WMC Mortgage Corp., a                 UNDER VARIOUS FEDERAL HOME LOAN
    California Corporation; WMC           PROTECTION STATUTES; FOR WRONGFUL
16  Direct, a California business         CONCEALMENT; FOR BREACH OF
    entity; Select Portfolio             CONTRACT; FOR USURY; FOR
17  Servicing, Inc.; a Utah              RESCISSION OF HOME LOAN MORTGAGE;
    business entity; California           FOR ACCOUNTING; FOR BREACH OF
18  Land Title Company of Marin, a        FIDUCIARY DUTY; AND FOR
    California business entity;           NEGLIGENCE.
19  Does 1 through 100, inclusive,

20       Defendants.                      CLASS ACTION (IF APPROPRIATE)

21

22                                        Demand for Jury Trial

23                                        Type of Case:
                                                  Unfair Business Practice
24

25                       INTRODUCTION

26       1. Plaintiff Patricia C. Barbera brings this action on

27  behalf of herself, and separately on behalf of affected members

28  of the general public, to challenge the unjust, unlawful, unfair

1   and fraudulent business practices of defendants in the manner in
2   which they handle mortgage loans on residential property in
3   California, as is more fully alleged herein.  Plaintiff seeks
4   compensatory damages, punitive damages, statutory penalties,
5   rescission, restitution, disgorgement of profits, attorney's
6   fees, and costs.  In support thereof, plaintiff hereby complains
7   and alleges as follows:

8

9                              **PARTIES**

10      2. Plaintiff Patricia C. Barbera ("plaintiff") is a 73-year
11  old individual residing at all material times in the County of
12  Marin, California.
13      3. At all material times, defendant WMC Mortgage Corp.
14  ("WMC"), formerly known as WMC Finance Co., was and is an entity
15  formed by Apollo Management L.P. and an individual named Leon
16  Black and others who acquired Weyerhaeuser Mortgage Company and
17  Weyerhaeuser Insurance Services.  WMC is a California corporation
18  with its corporate headquarters in Woodland Hills, California.
19  It operates throughout California making subprime loans on
20  residential property and it also acts as the administrator for
21  those loans.  WMC also owns and operates defendant WMCDirect,
22  WMC's online nationwide business services website for mortgage
23  brokers.  WMC claims that "since its launch, in June 1999, online
24  loan submissions have totaled more than $31 billion."
25      4. On June 14, 2004, GE Consumer Finance Co., the consumer
26  lending unit of the General Electric Company (NYSE: GE) purchased
27  WMC Finance Co., including defendants WMC and WMCDirect, from
28  affiliates of Apollo Management L.P.

---

FIRST AMENDED COMPLAINT - 2

5. At all material times, defendant Select Portfolio Servicing, Inc. ("SPS"), formerly known as Fairbanks Capital Corp., was and is a Utah corporation that acts on behalf of WMC as the servicer of WMC's loans, including WMC's loan to plaintiff.

6. At all material times, Fairbanks Capital Holding Corp. was and is a Delaware corporation which fully owns and controls as a subsidiary defendant SPS.

7. At all material times, defendant California Land Company of Marin ("Cal Land") was and is a title company with its principal business office in Marin County, California.

8. Plaintiff is ignorant of the true names and capacities of defendants sued herein as Does 1 through 100, and therefore plaintiff sues these defendants by such fictitious names. Plaintiff is informed and believes and thereon alleges that each of the fictitiously named defendants, including any such defendants that may be the agents, representatives, or parent or subsidiary corporations of the named defendants, is responsible in some manner for the occurrences, events, transactions, and damages alleged herein, and that plaintiff's damages as hereinafter set forth were proximately caused by the Doe defendants. Plaintiff will amend her complaint to state the true names and capacities of the Doe defendants when they have been ascertained.

9. Plaintiff is informed and believes and thereon alleges that each of the defendants, including the Doe defendants, acted in concert with each and every other defendant, and intended to and did participate in the events, acts, practices and courses of

1   conduct alleged herein, and each was a proximate cause of the
2   damages and statutory violations alleged herein.  At all times
3   herein mentioned, each defendant was the agent or employee of
4   each of the other defendants and was acting within the course and
5   scope of such agency or employment.

6       10. Plaintiff did not discover her causes of action against
7   defendants SPS and Cal Land until approximately ten months ago
8   when defendant WMC produced documents that plaintiff had been
9   requesting for nearly a year pursuant to written discovery that
10  plaintiff propounded in a pending state court case.  These
11  documents show that SPS's predecessor, Fairbanks, subsequent to
12  loan origination became the servicer for plaintiff's loan and
13  that Cal Land had improperly processed escrow documents required
14  for the loan that plaintiff had obtained from WMC.

15      11. Each of the following causes of action arises from a
16  home loan that WMC made to plaintiff that was intended primarily
17  for personal, family or household use.  This loan was a
18  "federally related mortgage loan" within the meaning of the Real
19  Estate Settlement Procedures Act ("RESPA").

20      12. Plaintiff is informed and believes, and based thereon
21  alleges, that WMC is a major "high cost" residential subprime
22  mortgage lender which has made more than ten billion dollars in
23  residential mortgage loans secured primarily by first mortgage
24  liens on personal residences in the State of California.
25  Plaintiff is further informed and believes, and based thereon
26  alleges, that WMC has been in the business of making residential
27  subprime mortgage loans and home equity loans as a "high-cost"
28

---

1    predatory lender for many years, primarily in the State of

2    California.

3                        SUMMARY OF FACTS

4        13. In June, 1997, plaintiff was in a desperate financial

5    situation.  She had pending against her a foreclosure action

6    initiated by another lender with respect to her personal

7    residence at 24 Caribe Isle, Novato, California.  To avoid that

8    foreclosure, plaintiff obtained a loan from WMC in the amount of

9    $322,500 at an annual percentage rate of 12.2573%.

10       14. On June 12, 1997, plaintiff executed loan documents at

11   Cal Land.  During the close of escrow, defendants failed to

12   provide to plaintiff two written notices of plaintiff's right to

13   rescind within three days of closing, and defendants failed to

14   prepare and deliver accurate disclosures that were mandated under

15   what is called TILA (the Truth in Lending Act, 15 U.S.C. sec.

16   1601. et seq.) for the close of escrow in a home mortgage

17   transaction.  Plaintiff further alleges in this respect that

18   defendants' failure to provide these right to rescind notices and

19   to prepare and deliver properly drafted close of escrow documents

20   as required by TILA was and continues to be a pattern of practice

21   routinely carried out by defendants to defraud or to harm home

22   loan borrowers.  These practices caused WMC's loan agreement with

23   plaintiff to be void.

24       15. On May 19, 1998, WMC notified plaintiff that it had not

25   received proof of her renewal of the hazard insurance policy on

26   plaintiff's home.  Despite plaintiff's numerous telephone calls

27   to WMC and despite verification provided to WMC by plaintiff's

28   insurance company that a copy of plaintiff's insurance policy had

1  been mailed to WMC, WMC proceeded to force-place a substitute

2  policy from another hazard insurance company at plaintiff's

3  expense.   On October 13, 1998, plaintiff received a copy of the

4  force-placed policy, which reflected a premium of $2,242, nearly

5  three times the annual premium for plaintiff's own policy of

6  $820, which plaintiff had been regularly paying.

7       16. In January, 1999, after numerous telephone calls to WMC,

8  plaintiff received a letter dated January 19, 1999, advising her

9  that WMC had received recent confirmation of hazard insurance

10 coverage for plaintiff's property and that WMC had canceled both

11 the force-placed insurance and its charge to plaintiff for that

12 policy.

13      17. Unbeknownst to plaintiff and contrary to WMC's

14 representation, WMC failed to cancel the $2,242 charge to

15 plaintiff's account for hazard insurance, and in fact WMC

16 continued to impose an annual charge on plaintiff's account for

17 this hazard insurance without notifying plaintiff.

18      18. On August 19, 1999, WMC served on plaintiff a ten-day

19 default notice listing amounts alleged due on plaintiff's

20 mortgage.   The amounts set forth in the default notice were

21 false.   They exceeded the amounts due under the note by a

22 substantial sum.   Using these excessive amounts as a pretext, on

23 November 5, 1999, WMC and its foreclosure agent, Millennium

24 Foreclosure Services, LLC ("Millennium"), served plaintiff with a

25 notice of default in the amount of $42,114.79.

26      19. On December 4, 1999, plaintiff sent a detailed letter to

27 both WMC and Millennium by facsimile.   In her letter, which is

28 "qualified written request" within the meaning of RESPA at

1 │ subsection (e) of 12 U.S.C. §2605, plaintiff denied that she owed

2 │ WMC the amount shown in Millennium's notice of default and she

3 │ renewed her previous oral requests to WMC, starting in June,

4 │ 1999, for an accurate accounting, as WMC's monthly payment

5 │ coupons sent to plaintiff contained erroneous accounting debits

6 │ and credits.

7 │     20. Subsection (e) of 12 U.S.C. §2605 of RESPA requires a

8 │ loan servicer to acknowledge receipt of a "qualified written

9 │ request" within 20 days and to respond to such a request within

10 │ 60 days, excluding legal public holidays, Saturdays, and Sundays.

11 │     21. Beginning June, 1999, through March 1, 2002, WMC

12 │ violated RESPA by failing to respond to plaintiff's oral requests

13 │ and also by failing to acknowledge or to respond within the

14 │ statutory time limits to plaintiff's "qualified written

15 │ requests." Not only did WMC fail to respond to plaintiff's oral

16 │ and written requests, it continued to bill plaintiff for improper

17 │ charges, and it also attempted to carry out a foreclosure sale of

18 │ plaintiff's home based upon these improper charges. Plaintiff

19 │ further alleges that WMC's failure to deliver the required right

20 │ to rescind notices and to prepare and process properly drafted

21 │ close of escrow documents as required by TILA was and continues

22 │ to be a pattern of practice routinely carried out by WMC to

23 │ defraud or to harm home loan borrowers.

24 │     22. From the inception of this loan in June 1997 through

25 │ December 2003, WMC failed to produce documents that plaintiff had

26 │ been requesting pursuant to written discovery she had propounded

27 │ in a pending state court case. When they were finally produced,

28 │ these documents showed that Fairbanks, now called SPS,

1   subsequently became the servicer for plaintiff's loan.

2   Unbeknownst to plaintiff, WMC failed to disclose that this loan

3   servicing had been transferred to Fairbanks.

4       23.   On February 11, 2000 plaintiff received from Millennium

5   a Notice of Trustee's Sale recorded on February 7, 2000, citing a

6   sale date of March 2, 2000.  The sale amount listed in the Notice

7   was $372,316.39.

8       24. On February 27, 2000, plaintiff sent via facsimile to

9   WMC a copy of a telegram advising WMC that it had failed to

10  respond to plaintiff's previous letters, had failed to provide an

11  accurate accounting, and had violated various laws and

12  regulations.

13      25. On March 1, 2000, WMC supplied plaintiff with a

14  statement purportedly showing the history of payments on the

15  loan, but this statement was incomprehensible, as were WMC's

16  monthly loan statements.

17      26.   On March 2, 2000, plaintiff notified WMC that she had

18  filed a Chapter 13 bankruptcy petition, and she verified that the

19  foreclosure had been canceled.  On April 11, 2000, in violation

20  of the automatic bankruptcy stay, WMC filed a Notice of Trustee's

21  Sale scheduled for May 10, 2000.

22      27. This mortgage loan transaction with WMC was a consumer

23  credit transaction entered into by plaintiff for personal,

24  household or family purposes.

25      28. Plaintiff is informed and believes, and based thereon

26  alleges that the acts and the conduct of the defendants alleged

27  herein above are a violation of Civil Code □ 1770, the Consumers

28  Legal Remedies Act ("CLRA"), including subsections (a)(8), (9),

1    (13), (14), (16) and (19), respectively.

2        29. Plaintiff has suffered substantial economic damage, and

3    other general and special damages, as a result of the herein-

4    mentioned violations of the Consumers Legal Remedies Act, in an

5    amount to be proven at time of trial.

6        30. Plaintiff is informed and believes, and based thereon

7    alleges, that defendants continue to engage in the above-

8    described deceptive practices, and that unless they be enjoined

9    from doing so by this court they will continue to do so, all to

10   the damage of its customers who will enter into home loan

11   mortgage transactions with the defendants.

12       31. The aforementioned violations of the Civil Code by

13   defendants were willful, despicable, cruel unjust, malicious,

14   fraudulent or oppressive, or were committed in conscious

15   disregard of the consequences to the plaintiff and other

16   consumers, thereby entitling plaintiff to punitive damages

17   pursuant to Civil Code []3294 and other California and federal

18   statutes.

19

20              **FIRST CAUSE OF ACTION**

21                 (Defendant WMC Only)

22            (Unlawful predatory lending practices)

23       32. Plaintiff realleges and incorporates herein by reference

24   the allegations set forth in Paragraphs 1 through 31 above as if

25   fully alleged herein.

26       33. Defendant WMC has consistently engaged in what is called

27   predatory lending practices, that is, it prays upon borrowers who

28   have poor credit history or who have limited financial resources

1  or who are elderly.  In doing so, WMC takes advantage of these

2  vulnerable borrowers by demanding that such borrowers, including,

3  for example, plaintiff, pay excessively high interest rates and

4  other excessive or unnecessary lending charges which are not

5  warranted by the creditworthiness of such borrowers.  In

6  addition, defendant WMC engaged in pervasive and egregious

7  accounting practices, which, combined with its failure to respond

8  to "qualified written requests," enabled WMC to act with impunity

9  on a scale heretofore not recognized in California home loan

10 lending practices.

11      34. These predatory lending practices are consistently

12 followed by WMC and constitute an unfair business practice under

13 what is called §17200 of the California Business & Professions

14 Code.

15      35. Wherefore, plaintiff, on behalf of herself and also on

16 behalf of the people of the State of California, seeks whatever

17 appropriate remedies would be available under §17200, including

18 without limitation statutory penalties, restitution, disgorgement

19 of profits, injunctive relief, and attorney's fees, and she seeks

20 to bar WMC from conducting business in the California home loan

21 market.

22

23              SECOND CAUSE OF ACTION

24           (Consumer Legal Remedies Act)

25           (Defendants WMC and SPS Only)

26     36. Plaintiff realleges and incorporates herein by reference

27 the allegations set forth in Paragraphs 1 through 35 above as if

28 fully alleged herein.

37. Plaintiff is informed and believes, and thereon alleges, that the acts and conduct of WMC and SPS as alleged in this complaint violate various provisions of what is called the California Consumers Legal Remedies Act, which is set forth in Civil Code §1750, _et seq._  These violations began when the loan was placed in June 1977 and they continue through the present time.

38. As a proximate result of said violations, plaintiff has suffered substantial economic damages and other general and special damages in an amount to be proven at time of trial.

39. Wherefore, plaintiff seeks whatever appropriate remedies would be available under §1750, _et seq._, including without limitation damages, statutory penalties, restitution, injunctive relief, and attorney's fees.


## THIRD CAUSE OF ACTION

### (Truth in Lending Act)

### (Defendants WMC and Cal Land Only)

40. Plaintiff realleges and incorporates herein by reference the allegations set forth in Paragraphs 1 through 39 above as if fully alleged herein.

41. Plaintiff is informed and believes, and thereon alleges, that the acts and conduct of defendants as alleged in this complaint violate various provisions of what is called the Truth in Lending Act, 15 U.S.C. §1601 _et seq._ ("TILA"), Regulation Z, and what is called the Home Ownership and Equity Protection Act, 15 U.S.C §1639 ("HOEPA").

42. These violations include, without limitation, the

1   failure to provide to plaintiff the mandated written three-day

2   right to cancel notice prior to the presumed loan closing date of

3   June 11, 1997. In addition, defendants failed to provide accurate

4   disclosures, as mandated by these statutes.  Any statute of

5   limitations applicable to these violations has been tolled under

6   the doctrine of what is called equitable tolling.

7        43. As a proximate result of said TILA, Regulation Z, and

8   HOEPA violations, plaintiff has suffered substantial economic

9   damages and other general and special damages in an amount to be

10   proven at time of trial, and she is entitled to rescission of her

11   loan transaction with WMC.

12        44. Wherefore, plaintiff seeks damages and whatever other

13   remedies are available under TILA, Regulation Z, and HOEPA,

14   including without limitation rescission of her loan transaction

15   with WMC.

16

17                    FOURTH CAUSE OF ACTION

18              (Real Estate Settlement Procedures Act)

19                  (Defendants WMC and SPS Only)

20        45. Plaintiff realleges and incorporates herein by reference

21   the allegations set forth in Paragraphs 1 through 44 above as if

22   fully alleged herein.

23        46. Plaintiff is informed and believes, and thereon alleges,

24   that the acts and conduct of defendants as alleged in this

25   complaint violate various provisions of what is called the Real

26   Estate Settlement Procedures Act, 12 U.S.C. §2601, et seq.

27   ("RESPA").  These violations began when the loan was placed in

28   June 1997 and they continue through the present time.

1      47. These violations include, without limitation, kickbacks,

2  referral fees, unnecessary escrow accounts for taxes and hazard

3  insurance, improper or inaccurate reporting to credit bureaus,

4  failure to disclose the transfer of the servicing of plaintiff's

5  loan account, failure to respond to acknowledge "payments from a

6  borrower" and to acknowledge "making the payments of principal

7  and interest as may be required pursuant to the terms of the

8  loan," and other home mortgage lending practices that tend to

9  cause excessive borrowing costs for home loan borrowers.

10      48.  As a proximate result of said RESPA violations,

11  plaintiff has suffered substantial economic damages and other

12  general and special damages in an amount to be proven at time of

13  trial, and she is entitled to rescission of her loan transaction

14  with WMC.

15      49. Wherefore, plaintiff seeks damages and whatever other

16  remedies are available under RESPA.

17

18                  **FIFTH CAUSE OF ACTION**

19               (Debt Collection Violations)

20              (Defendants WMC and SPS Only)

21      50.  Plaintiff realleges and incorporates herein by

22  reference the allegations set forth in Paragraphs 1 through 49

23  above as if fully alleged herein.

24      51. Plaintiff is informed and believes, and thereon alleges,

25  that the acts and conduct of defendants as alleged in this

26  complaint violate various provisions of what is called the

27  Federal Fair Debt Collections Practices Act, 15 U.S.C. §1692 <u>et</u>

28  <u>seq</u>., including, for example, improper or inaccurate reports to

1   credit borrowers.  In addition, it is a violation of RESPA, 12

2   U.S.C. §2605(3)(d), which protects a borrower's credit rating.

3   The loan servicer may not provide information regarding any

4   overdue payment to any consumer reporting agency.  These

5   violations began when plaintiff's loan was placed in June 1997

6   and they continue through the present time.

7        52. As a proximate result of said violations, plaintiff has

8   suffered substantial economic damages and emotional distress and

9   other general and special damages in an amount to be proven at

10  time of trial.

11       53. Wherefore, plaintiff seeks whatever remedies may be

12  available under this federal debt collections statute and under

13  RESPA, including, without limitation, compensatory damages,

14  statutory damages, statutory penalties and attorney's fees.

15

16                    <u>SIXTH CAUSE OF ACTION</u>

17                    (Wrongful Concealment)

18                    (Defendant WMC Only)

19       54. Plaintiff realleges and incorporates herein by reference

20  the allegations set forth in Paragraphs 1 through 53 above as if

21  fully alleged herein.

22       55. At the time in June 1997 when WMC made to plaintiff the

23  home loan which is the subject of this complaint, WMC implied in

24  its loan documents that WMC would service plaintiff's loan

25  honestly and fairly and accurately, using accurate accounting

26  procedures, that it would send to plaintiff accurate statements

27  regarding loan payments, loan balances, escrow charges, and other

28  loan charges stated in connection with WMC's loan to plaintiff,

1  and that it would not force place hazard insurance unless there

2  was clear and convincing proof that plaintiff was uninsured.

3      56. Said implied representations were false.  In truth, as

4  part of its predatory lending practices WMC intended to misstate

5  the amounts due under its loan to plaintiff in order to obtain

6  greater compensation under the loan than was permitted either by

7  the loan contract itself or by the various statutory consumer

8  protections that have been enacted to prevent predatory lending

9  practices, and it force placed hazard insurance even though the

10  evidence indicated that no such hazard insurance was needed.

11      57. Plaintiff relied upon the representations of WMC, as

12  alleged above, and plaintiff's reliance was reasonable in view of

13  the fact that at the time that when WMC made this loan, it led

14  plaintiff to believe that WMC was a highly ethical and honest

15  home loan lender.  Plaintiff did not discover the falsity of

16  WMC's implied representations until within three years of the

17  filing of this complaint.

18      58. As a proximate result of said wrongful concealment,

19  plaintiff has suffered substantial economic damages and other

20  general and special damages in an amount to be proven at time of

21  trial, and she is entitled to rescission of her loan transaction

22  with WMC.

23      59.  Wherefore, plaintiff seeks both economic and non-

24  economic damages in such amounts as may be allowed at time of

25  trial.

26

27

28

1

## SEVENTH CAUSE OF ACTION

2

(Breach of Contract)

3

(Defendant WMC Only)

4      60. Plaintiff realleges and incorporates herein by reference

5   the allegations set forth in Paragraphs 1 through 59 above as if

6   fully alleged herein.

7      61. On or about June 1997, plaintiff entered into a written

8   contract with defendant WMC whereby WMC agreed to loan plaintiff

9   the sum of $322,500 secured by a mortgage recorded against

10  plaintiff's home in Marin County, California.  In that home loan

11  agreement, WMC promised, <u>inter alia</u>, that so long as plaintiff

12  timely made monthly payments, plaintiff would have thirty years

13  in which to repay all sums due under the loan.  Plaintiff has

14  performed all of the obligations under this home loan agreement

15  she was required to perform.

16      62. Within four years of the filing of this complaint, WMC

17  breached this home loan agreement by declaring the loan in

18  default, by demanding that plaintiff pay charges that were not

19  due under the loan, and by attempting to exercise foreclosure

20  rights given to WMC in the mortgage securing loan, even though

21  WMC did not have the right to exercise such foreclosure rights.

22      63. As a proximate result of WMC's breach of this home loan

23  agreement as alleged above, plaintiff has sustained compensatory

24  damages in an amount to be determined at time of trial,

25  including, without limitation, damages she sustained when she was

26  forced to seek bankruptcy court protection.

27      64. Wherefore, plaintiff seeks compensatory damages in such

28  amounts as may be allowed by the court at time of trial.

## EIGHTH CAUSE OF ACTION

### (Elder Abuse)

### (This Cause of Action is Deleted)

## NINTH CAUSE OF ACTION

### (Usury Damages)

### (Defendant WMC Only)

69. Plaintiff realleges and incorporates herein by reference the allegations set forth in Paragraphs 1 through 64 above as if fully alleged herein.

70. The interest rate charged by defendants for the WMC loan which is the subject of this complaint was usurious as that term is defined and applied by the California Constitution. This usury occurred within four years of the filing of this complaint. At the time this usury occurred, WMC was not a commercial lender as that term is used in the California Constitution, and WMC did not "arrange" for this loan as a licensed real estate broker.

71. Wherefore, plaintiff is entitled to such damages as the usury laws of California may allow.

## TENTH CAUSE OF ACTION

### (Rescission)

### (Defendant WMC Only)

72. Plaintiff realleges and incorporates herein by reference the allegations set forth in Paragraphs 1 through 71 above as if fully alleged herein.

73. At the time in June 1997 when defendant WMC made to

1  plaintiff the home loan which is the subject of this complaint,

2  WMC implied in the loan documents that it presented to plaintiff

3  that WMC would service plaintiff's loan honestly and fairly and

4  accurately, using accurate accounting procedures, that it would

5  send to plaintiff accurate statements regarding loan payments,

6  loan balances, escrow charges, and other loan charges stated in

7  connection with defendant WMC's loan to plaintiff, and that it

8  would not force place hazard insurance unless there was clear and

9  convincing.

10      74. Said implied representations were false.  In truth, as

11  part of its predatory lending practices defendant WMC intended to

12  misstate the amounts due under its loan to plaintiff in order to

13  obtain greater compensation under the loan than was permitted

14  either by the loan contract or by the various statutory consumer

15  protections that have been enacted to prevent predatory lending

16  practices and it was to force place hazard insurance even though

17  the evidence indicated that no such hazard insurance was needed.

18      75. Plaintiff relied upon the representations of defendant

19  WMC, as alleged above, and plaintiff's reliance was reasonable in

20  view of the fact that at the time of this loan WMC led plaintiff

21  to believe that WMC was a highly ethical and honest home loan

22  lender.

23      76. As a proximate result of said misrepresentations,

24  plaintiff has suffered substantial economic damages and emotional

25  distress and other general and special damages in an amount to be

26  proven at time of trial.

27      77.  Wherefore, plaintiff seeks rescission of her loan

28  transaction with WMC Mortgage, including without limitation

1  cancellation of the loan and the rescission of the loan contract
2  and rescission of any other documents related to or made a part
3  of the loan contract, and she also seeks restitution of all
4  monies she has paid to WMC which under California or federal law
5  WMC was not entitled to receive.

6

7                        ELEVENTH CAUSE OF ACTION

8                              (Accounting)

9                       (Defendants WMC and SPS Only)

10      78.  Plaintiff realleges and incorporates herein by
11  reference the allegations set forth in paragraphs 1 through 77
12  above as if fully alleged herein.

13      79.  Defendants WMC and/or SPS owe a balance to plaintiff on
14  plaintiff's loan account with defendants that can only be
15  ascertained by an accounting.  The reason an accounting is
16  required is because the monetary damages that plaintiff seeks in
17  this complaint cannot be determined by calculation or by
18  reference to the allegations of the complaint.

19

20                        TWELFTH CAUSE OF ACTION

21                       (Breach of Fiduciary Duty)

22                       (Defendant Cal Land Only)

23      80.  Plaintiff realleges and incorporates herein by
24  reference the allegations set forth in paragraphs 1 through 79
25  above as if fully alleged herein.

26      81.  At the time the home loan in question was placed in
27  June 1997, defendant Cal Land acted as the escrow, and as such
28  defendant Cal Land owed a fiduciary duty to both plaintiff and

1    defendant WMC.

2        82.    Defendant Cal Land Title breached its fiduciary duty

3    by concealing and failing to disclose to plaintiff the mandated

4    written three-day right to cancel notice, and it also failed to

5    provide accurate disclosures, as mandated by TILA, Regulation Z,

6    and HOEPA.

7        83.    As a proximate result of said breach of fiduciary duty,

8    plaintiff has suffered substantial economic damages and other

9    general and special damages in an amount to be proven at time of

10   trial, and she is entitled to rescission of her loan transaction

11   with WMC.

12       84.  Wherefore, plaintiff seeks damages and whatever other

13   remedies are available under TILA, Regulation Z, and HOEPA,

14   including without limitation rescission of her loan transaction

15   with WMC.

16

17                   THIRTEENTH CAUSE OF ACTION

18                          (Negligence)

19                   (Defendant Cal Land Only)

20       85.    Plaintiff realleges and incorporates herein by

21   reference the allegations set forth in paragraphs 1 through 84

22   above as if fully alleged herein.

23       86.    At the time the home loan in question was placed in

24   June 1997, defendant Cal Land acted as the escrow.

25       87.    While acting as the escrow, defendant Cal Land Title

26   committed negligence by failing to providing to plaintiff the

27   mandated written three-day right to cancel notice, and it also

28   failed to provide accurate disclosures, as mandated by TILA,

                        FIRST AMENDED COMPLAINT - 20

1   Regulation Z, and HOEPA.

2   88.  As a proximate result of said negligence, plaintiff has

3   suffered substantial economic damages and other general and

4   special damages in an amount to be proven at time of trial.

5   89. Wherefore, plaintiff seeks compensatory damages in an

6   amount according to plaintiff's proof at time of trial.

7

8   <u>PUNITIVE DAMAGES</u>

9   90. Plaintiff realleges and incorporates herein by reference

10   the allegations set forth in paragraphs 1 through 89 above as if

11   fully alleged herein.

12   91.  As a proximate result of the statutory violations and

13   the concealment and the usury violations and the breach of

14   fiduciary duty alleged in this complaint, plaintiff is entitled

15   to an award of punitive damages pursuant to the provisions of

16   Civil Code §3294.

17

18   <u>PRAYER</u>

19   a. Plaintiff seeks both economic and non-economic

20   compensatory damages to the extent allowed by any of the causes

21   of action alleged in this complaint.

22   b. Plaintiff seeks statutory penalties to the extent allowed

23   by any of the causes of action alleged in this complaint.

24   c. Plaintiff seeks rescission and restitution and

25   disgorgement to the extent allowed by any of the causes of action

26   alleged in this complaint.

27   d. Plaintiff seeks usury damages to the extent allowed by

28   any of the causes of action alleged in this complaint.

1       e. Plaintiff seeks punitive damages to the extent allowed by

2 any of the causes of action alleged in this complaint.

3       f. Plaintiff seeks attorney's fees to the extent allowed by

4 any of the causes of action alleged in this complaint.

5       g. Plaintiff seeks costs of suit to the extent allowed by

6 any of the causes of action alleged in this complaint.

7       h. Plaintiff seeks such other and further relief that the

8 court may allow.

9

10

11 Date:   March 15, 2005           /s/ John G. Warner

                                 John G. Warner

12                                 Attorney for Plaintiff

                                 Patricia C. Barbera

13

14 W32:Barbera1stAmend.doc

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# EXHIBIT "D"

1  DANIEL A. GAMER, ESQ. (CA SBN 42818)
   Attorney at Law
2  55 Professional Center Parkway #H
   San Rafael, CA 94903-2729
3  Telephone: (415) 472-6655

4
   Attorney for Defendant
5  CALIFORNIA LAND TITLE OF MARIN

6

7

8

9              UNITED STATES DISTRICT COURT

10            NORTHERN DISTRICT OF CALIFORNIA

11

12  Patricia C. Barbera,                    | No.      C 04 03738 SBA

13                    Plaintiff,

14          v.                              | DEFENDANT CALIFORNIA LAND
                                            | TITLE OF MARIN'S OPPOSITION TO
15  WMC Mortgage Corp., a California corporation; | PLAINTIFF'S MOTION TO FILE
    WMC Finance Co.; Apollo Management L.P.'      | SECOND AMENDED COMPLAINT
16  WMCDirect; GE Consumer Finance, a unit of
    General Electric Company; Fairbanks Capital
17  Corp., a Utah corporation; Fairbanks Capital | Date: May 17, 2005
    Holding Corp., a Delaware corporation;        | Time: 1:00 p.m.
18  California Land Title Company of Marin, a      | Court: The Hon. Saundra B. Armstrong
    California business entity; Does 1 through 100, | Dept. 3
19  inclusive,

20

21                    Defendants.

22

23                  **INTRODUCTION**

24      Plaintiff seeks leave of Court to file a Second Amended Complaint after filing

25  her First Amended Complaint without leave of Court.  Barbera acknowledges the filing

26
                              1

Defendant California Land Title of Marin's Opposition to
Plaintiff's Motion to File Second Amended Complaint
Case No. C 04-03738 SBA

of her First Amended Complaint was improper as to California Land Title Company of Marin (hereinafter "CLTC") since CLTC had previously filed an Answer to the original Complaint.  (Motion at p. 5-6.)  CLTC contends that all claims asserted against it, whether in the form of the original Complaint, the First Amended Complaint, or the proposed Second Amended Complaint are a sham and without factual or legal justification.  Further, Barbera's amendments are futile because her allegations against CLTC — which took place nearly eight years ago on June 12, 1997 — are barred by the statute of limitations.

## FACTUAL BACKGROUND AND PROCEDURAL HISTORY

CLTC is an underwritten title company with offices in Marin County, California.  The business operations of CLTC consist of issuance of title insurance policies and provision of escrow services for real estate transactions.  The present litigation involves an escrow closed by CLTC for the Barbera/WMC transaction on June 12, 1997.  As noted in previous pleadings filed herein, Barbera filed a complaint in San Francisco Superior Court on June 11, 2001 against Defendants other than CLTC ("*Barbera I*").  This separate pending case is currently awaiting trial.  A copy of the Complaint filed in *Barbera I* was judicially noticed in the present action by the WMC Defendants and attached as an exhibit to the WMC Defendants' Motion to Dismiss.  In paragraph 26(c) of the Complaint in *Barbera I*, at page 6, lines 18-22, Barbera alleged:

> "At the close of the transaction, the title company failed to provide Plaintiff with a copy of the Disclosure Statement and provided her with a single copy of the Notice of the Right to Cancel.  Plaintiff was not given copies of any documents in which appeared material terms and conditions of the loan, including but not limited to the unconscionable loan origination fee, until after the loan transaction was consummated."

2

Defendant California Land Title of Marin's Opposition to
Plaintiff's Motion to File Second Amended Complaint
Case No. C 04-03738 SBA

On July 23, 2004, Plaintiff filed her original Complaint in the present action in San Francisco Superior Court after her Motion to Amend the Complaint and add new parties in *Barbera I* was denied. A Notice of Removal of the Action was filed in this Court on September 3, 2004. CLTC filed its Answer on January 7, 2005. On January 14, 2005, CLTC joined in the WMC Defendants' Motion to Dismiss. Plaintiff filed her First Amended Complaint in the present action without prior leave of Court on March 15, 2005 and on April 12, 2005 filed the pending Motion for Leave of Court to file a Second Amended Complaint.

The proposed Second Amended Complaint contains three causes of action against CLTC. The Third Cause of Action claims damages resulting from an alleged violation of the Truth in Lending Act ("TILA"), Regulation Z and The Homeowners' Equity Protection Act of 1994 ("HOEPA"). The Twelfth Cause of Action claims damages for an alleged breach of fiduciary duty, and the Thirteenth Cause of Action claims damages for alleged escrow negligence. For both the Twelfth and Thirteenth Causes of Actions, the alleged wrongful conduct by CLTC consists of "concealing and failing to disclose to plaintiff the mandated written three-day right to cancel notice" and "fail[ing] to provide accurate disclosures, as mandated by TILA, Regulation Z and HOEPA." (Proposed Second Amended Complaint, ¶¶ 82, 87.)

## ARGUMENT

### A.    STANDARD FOR LEAVE TO AMEND

In considering a Motion to Amend the Pleadings, the Court may consider undue delay, prejudice to the opposing party, futility of the amendment, bad faith

3

Defendant California Land Title of Marin's Opposition to
Plaintiff's Motion to File Second Amended Complaint
Case No. C 04-03738 SBA

and whether the party has previously amended its pleadings. Futility alone can justify denial of leave to amend. Bonin v. Calderon, 59 F.3d 815, 845 (9th Cir. 1995). See also Foman v. Davis, 371 U.S. 178, 182 (1962) (establishing futility as grounds to deny motion to amend); Funtanilla v. Rubles, No. C99-5425, 2003 U.S. Dist. LEXIS 9313, at *19 (N.D. Cal. June 3, 2003) (denying motion to amend because an attempt to bring time-barred claims against new defendants would be futile).

### B.   BARBERA FAILS TO STATE FACTS SUFFICIENT TO CONSTITUTE A CLAIM AGAINST CLTC.

#### 1.   The Duty of an Escrow Agent

Admittedly, an escrow holder is an agent and fiduciary of the parties to the escrow. However, the agency created by the escrow is limited to the obligation of the escrow holder to carry out the instructions of each of the parties to the escrow. Vournas v. Fidelity Nat. Tit. Ins. Co., 73 Cal. App. 4th 668, 674 (1999). In defining the scope of the escrow's fiduciary duties, the general principle is that the escrow holder must comply strictly with the instructions of the parties. Amen v. Merced County Title Co., 58 Cal. 2d 28, 534 (1962). Beyond the faithful compliance by the escrow with its principals' instructions, the escrow holder has no general duty to police the affairs of its principals. Claussen v. First American Title Guaranty Co., 186 Cal. App. 3d 429, 435-436 (1986). Stated another way, absent clear evidence of fraud, an escrow's obligations are limited to compliance with the parties' instructions. Lee v. Title Ins. & Trust Co., 264 Cal. App. 2d 160, 162 (1968). The escrow owes no general duty of disclosure to its principal(s). Cunningham v. Security Title Ins. Co., 241 Cal.App.2d 626, 630-631 (1966). The escrow has no obligation to provide advice regarding the business

4

Defendant California Land Title of Marin's Opposition to
Plaintiff's Motion to File Second Amended Complaint
Case No. C 04-03738 SBA

propriety of the transaction.  <u>Axley v. Transamerica Title Ins. Co.</u>, 88 Cal.App.3d 1, 9-10 (1978).  The provisions of the TILA, Regulation Z or HOEPA do not enlarge or modify the basic duties of the escrow holder.

### 2.    Barbera Fails to Allege Facts to Establish Any Legal Duty of CLTA Pursuant to TILA, Regulation Z and HOEPA

Barbera alleges that escrow closed on June 12, 1997 (Proposed Second Amended Complaint, ¶ 14.)  She makes no allegations of wrongful or participatory conduct by CLTC from and after this date.  She makes no allegations that CLTC violated oral or written instructions provided by Barbera during the course of the escrow.  She makes no allegations that CLTC violated any law or regulation that imposes specific duties upon an escrow holder.  She makes no specific factual allegations of concerted activity with the other Defendants.  A general allegation of concerted action has no pleading value or legal consequence.  If a plaintiff elects to sue on the theory of conspiracy, the complaint should allege (a) the formation and operation of the conspiracy, (b) the wrongful act(s) of any of the conspirators pursuant to the conspiracy and (c) the resulting damage.  <u>Orloff v. Metropolitan Trust Co.</u>, 17 Cal.2d 484, 488 (1941); <u>Sales Corp. v. Olsen</u>, 80 Cal.App.3d 645, 649 (1978).  The Complaint fails to allege facts to establish any legal duty of an escrow pursuant to TILA, Regulation Z or HOEPA, assuming such a legal duty might exist.  Plaintiff's pleadings falsely imply that the TILA, Regulation Z and HOEPA are independent of each other.  In fact, Regulation Z and HOEPA are integrated with the TILA, which provides the enforcement standard and penalty parameters for violation.  CLTC cannot be legally liable under the TILA, Regulation Z or HOEPA since CLTC is not a "creditor" under the TILA or HOEPA [see 15 U.S.C. §1602(f)] or a "business which offers or extends credit" under Regulation Z [see 12 CFR §226.1(c)].  Stated another way, the TILA and HOEPA impose legal liability _only_

5

Defendant California Land Title of Marin's Opposition to
Plaintiff's Motion to File Second Amended Complaint
Case No. C 04-03738 SBA

upon "creditors" or "lessors" as defined therein, and Regulation Z only applies to individuals or businesses that offer or extend credit under the four conditions described in 12 CFR §226.1(c). Barbera has failed to state facts sufficient to constitute a claim against CLTC under the TILA, Regulation Z or HOEPA. Because these amendments are futile, Barbera should accordingly be denied leave to amend.

### 3.    The Statute of Limitations Bars Barbera's Claims Against CLTC.

Under California law, the statute of limitations for escrow liability may range from two to four years, depending upon the theory of recovery. For an action based upon an alleged breach of oral instructions, the statute of limitations is two years pursuant to California Code of Civil Procedure section 339. The statute of limitations for breach of fiduciary duty is either three or four years as the result of conflicting case law. See California Code of Civil Procedure § 338(b) (utilizing three years); Kruse v. Miller, 143 Cal. App. 2d 656, 660 (1956) (utilizing three years); Hecht v. Harris, Upham & Co., 430 F.2d 1202, 1210 (9th Cir. 1970) (utilizing three years); Stallberg v. Western Title Ins. Co., 230 Cal. App. 3d 1223, 1230 (1991) (utilizing four years and applying California Code of Civil Procedure § 343). For breach of a written escrow instruction, the statute of limitations is four years. Amen v. Merced Co. Title Co., 58 Cal. 2d 528, 534 (1962).

Barbera's claims against CLTC are based on incidents that took place on June 12, 1997 — over seven years before she filed the original Complaint on July 23, 2004 — and such claims are barred by the statute of limitations, absent a detailed factual pleading of facts that would invoke the delayed discovery rule. Prudential Home Mortgage Co. v. Superior Court, 66 Cal.App. 4th 1236, 1246-1247; McKelvey v. Boeing North American, Inc., 74 Cal.App. 4th 151, 160-161. The proposed pleading lacks the

6

Defendant California Land Title of Marin's Opposition to
Plaintiff's Motion to File Second Amended Complaint
Case No. C 04-03738 SBA

required specificity and essential substance. This conclusion is clear and obvious from the face of the proposed Second Amended Complaint. Barbera alleges:

> "Plaintiff did not discover her causes of action against Defendants SPS and CAL LAND until approximately ten months ago when Defendant WMC produced documents that Plaintiff had been requesting for nearly a year pursuant to written discovery that Plaintiff propounded in a pending state court case. These documents show that SPS's predecessor, Fairbanks, subsequent to loan origination became servicer for Plaintiff's loan and that CAL LAND had improperly processed escrow documents required for the loan that Plaintiff had obtained from WMC."

(Proposed Second Amended Complaint, ¶ 10.) This effort to invoke the delayed discovery rule belies the factual allegations of paragraph 26(c) of the Complaint filed in *Barbera I* on June 11, 2001 and is an obvious effort to mislead (deceive) this Court. Such conduct should not be permitted. Moreover, even Barbera's vague reference to unspecified documents suggesting CLTC engaged in some equally vague improper escrow processing does not salvage her claims. There are no allegations that CLTC even intentionally or otherwise withheld documents or information forming the predicates of her claims against CLTC. In addition there are no facts alleged excusing Barbera from timely prosecuting TILA claims about disclosures she alleges should have been, but were not, provided to her in June 1997. The factual predicates of those allegations — what documents she supposedly did and did not receive — were obviously known to her almost eight years ago, and she offers no allegations (nor could she) that permit her to avoid that fact.

As her claims against CLTC are barred by the statute of limitations, it would be futile to allow Barbera to amend her stale claims against CLTC.

7

Defendant California Land Title of Marin's Opposition to
Plaintiff's Motion to File Second Amended Complaint
Case No. C 04-03738 SBA

1

2

3
**CONCLUSION**

4     As to CLTC, the original complaint and each subsequent version is a sham. The

5 only factual basis for the claimed liability is the alleged violation of the TILA,

Regulation Z and/or HOEPA. As noted above, these statutes and regulations impose no

6 duties or liability upon CLTC in its capacity as an escrow service provider.

7 Notwithstanding this fundamental flaw, all alleged claims against CLTC are also time-

8 barred. For the foregoing reasons, CLTC respectfully requests that Plaintiff's Motion

9 for Leave of Court to file the proposed Second Amended Complaint be denied as being

10 futile as a matter of fact and law.

11

12 Dated: April 26, 2005

13

14

15                                 DANIEL A. GAMER
                                   Attorney for Defendant
16                                 California Land Title of Marin

17

18

19     I, Daniel A. Gamer, am the ECF User whose ID and password are being used to

20 file this Opposition to Plaintiff's Motion for Leave to File a Second Amended
Complaint.

21

22

23

24                                 Daniel A. Gamer

25

26

8

Defendant California Land Title of Marin's Opposition to
Plaintiff's Motion to File Second Amended Complaint
Case No. C 04-03738 SBA

# TABLE OF CONTENTS

Page No.

INTRODUCTION ............................................................... 1

FACTUAL BACKGROUND AND PROCEDURAL HISTORY ....... 2

ARGUMENT ................................................................. 3

    A.   STANDARD FOR LEAVE TO AMEND .................... 3

    B.   BARBERA FAILS TO STATE FACTS SUFFICIENT TO
        CONSTITUTE A CLAIM AGAINST CLTC ................. 4

        1.   The Duty of an Escrow Agent ........................... 4

        2.   Barbera Fails to Allege Facts to Establish Any Legal Duty
            of CLTC Pursuant to TILA, Regulation Z and HOEPA   5

        3.   The Statute of Limitations Bars Barbera's Claims Against
            CLTC ............................................... 6

CONCLUSION ............................................................. 8

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

## **TABLE OF AUTHORITIES**

<u>**CASES**</u>                                                                                    <u>Page No.</u>

<u>Amen v. Merced County Title Co.</u>, 58 Cal.2d 528 (1962)                           4, 6

<u>Axley v. Transamerica Title Ins. Co.</u>, 88 Cal.App.3d 1 (1988)                    5

<u>Bonin v. Calderon</u>, 59 F.3d 815 (9th Cir. 1995)                                4

<u>Claussen v. First American Title Guaranty Co.</u>, 186 Cal.App.3d 429 (1986)       4

<u>Cunningham v. Security Title Ins. Co.</u>, 241 Cal.App.2d 626 (1966)              4

<u>Foman v. Davis</u>, 371 U.S. 178 (1962)                                           4

<u>Funtanilla v. Rubles</u>, No. C99-5425, TEH2003 U.S. Dist. LEXIS 9313
    (N.D. Cal. June 3, 2003)                                                         4

<u>Hecht v. Harris, Upham & Co.</u>, 430 F.2d 1202 (9th Cir. 1970)                   6

<u>Kruse v. Miller</u>, 143 Cal.App.2d 656 (1956)                                    6

<u>Lee v. Title Ins. & Trust Co.</u>, 264 Cal.App.2d 160 (1968)                      4

McKelvey v. Boeing North American, Inc., 74 Cal.App. 4th 151
    (1999)                                                                           6

<u>Orloff v. Metropolitan Trust Co.</u>, 17 Cal.2d 484 (1941)                        5

<u>Prudential Home Mortgage Co. v. Superior Court</u>, 66 Cal.App.4[th]
    1236 (1998)                                                                      6

<u>Sales Corp. v. Olsen</u>, 80 Cal.App.3d 645 (1978)                                5

<u>Stallberg v. Western Title Ins. Co.</u>, 230 Cal.App.3d 1223 (1991)              6

<u>Vournas v. Fidelity Nat. Tit. Ins. Co.</u>, 73 Cal.App.4[th] 668 (1999)          4

**STATUTES**

**Page No.**

12 CFR 226.1(c)                                           5-6

15 U.S.C. §1602(f)                                        5

Homeowners Equity Protection Act of 1994                  3-7

Truth in Lending Act                                      3-7

Regulation Z                                             3-7

California Code of Civil Procedure §338(b)                6

California Code of Civil Procedure §339                   6

California Code of Civil Procedure §343                   6

# EXHIBIT "E"

1

2

3

4

5

6

7        IN THE UNITED STATES DISTRICT COURT

8        FOR THE NORTHERN DISTRICT OF CALIFORNIA

9

10   PATRICIA BARBERA,                          No. C 04-3738 SBA

11            Plaintiff,                         **ORDER**

12      v.

13   WMC MORTGAGE CORP., et al.,

14            Defendants.

15

16        This matter comes before the Court on Plaintiff Patricia Barbera's Motion for Leave to Amend and

17   Defendants Fairbanks Capital Corporation and Fairbanks Capital Holding Corporation's (collectively

18   "Fairbanks") Motion for Entry of Final Judgment pursuant to Fed. R. Civ. P. 54.

19   Having read and considered the arguments presented by the parties in their moving papers, the Court finds

20   this matter appropriate for disposition without a hearing.  The Court HEREBY DENIES Plaintiff's Motion

21   to Amend and GRANTS Fairbanks' Motion for Entry of Final Judgment.

22                                    **BACKGROUND**

23        On September 3, 2004, this action was removed from San Francisco Superior Court.  Plaintiff filed

24   the instant lawsuit alleging improper and illegal conduct by Defendants in the "manner in which they handle

25   mortgage loans on residential property in California." (Complaint, ¶ 1.)  On January 7, 2005, after several

26   stipulated extensions of time to respond to the Complaint, Defendant California Land Title of Marin ("Cal

27   Land") filed an Answer to the Complaint.

28        On January 10, 2005, Fairbanks filed a Motion for Summary Judgment, in which it claimed that

**United States District Court**
For the Northern District of California

**United States District Court**
For the Northern District of California

1    Plaintiff's suit was barred under the principles of res judicata and release because Plaintiff was a member of

2    a nationwide class action, which challenged the same conduct, and was subsequently settled. Plaintiff did

3    not dispute that she was a member of the prior class action against Fairbanks, which involved identical

4    claims, and ended in a final judgment on the merits. Instead, Plaintiff claimed she was not bound by the

5    prior judgment or release because she did not receive actual notice of the settlement. Defendants WMC

6    Mortgage, WMC Finance, and WMC Direct ("WMC") sought to join in Fairbanks' Motion for Summary

7    Judgment.[1]

8         On March 7, 2005, the Court granted Fairbanks' Motion for Summary Judgment, finding that

9    Plaintiff's claims against Fairbanks were barred by the doctrines of res judicata and release. [Docket No.

10   71.] The Court, however, denied WMC's request to join in Fairbanks' motion because the parties were

11   not similarly situated. On March 15, 2005, Plaintiff filed a First Amended Complaint ("FAC"). The FAC

12   includes additional allegations against Defendant WMC, an additional cause of action for an accounting

13   against WMC and Fairbanks, names Cal Land in the third cause of action for violations of, inter alia, the

14   Truth in Lending Act, and adds two additional causes of action against Cal Land for breach of fiduciary

15   duty and negligence.[2] On March 21, 2005, Fairbanks filed a Motion for Entry of Final Judgment pursuant

16   to Fed. R. Civ. P. 54, and noticed the Motion for hearing on April 26, 2005. On April 12, 2005, one-

17   week after the deadline for filing an Opposition, Plaintiff filed her Opposition to Fairbanks' Motion for

18   Entry of Final Judgment. The Opposition asserts that entry of final judgment is inappropriate because of

19   Plaintiff's March 15, 2005 filing of the FAC. On April 18, 2005, Fairbanks filed a reply.

20        Also on April 12, 2005, Plaintiff filed a Motion for Leave to Amend the FAC, and attached a

21   proposed Second Amended Complaint ("SAC"). In her Request for Leave to Amend the FAC, Plaintiff

22

23        [1]Also on January 10, 2005, WMC filed a Motion to Dismiss. On February 2, 2005, Plaintiff
24   moved to continue both the hearing on WMC's Motion to Dismiss and Fairbanks' Motion for Summary
     Judgment. On February 4, 2005, Defendants filed a consolidated response to Plaintiff's request in which
25   they asserted that they were willing to accommodate Plaintiff's request to continue the Motion to Dismiss,
     but not the hearing on the Motion for Summary Judgment. After considering the arguments presented by
26   the parties, the Court granted Plaintiff's request to continue the hearing on WMC's Motion to Dismiss and
     denied Plaintiff's request to continue the hearing on Fairbanks' Motion for Summary Judgment.

27        [2]The FAC also names Select Portfolio Servicing, Inc. ("SPS") as a defendant, and suggests that
28   this is the new name of Fairbanks Capital Corp. (FAC, ¶ 5.) Fairbanks, however, does not call itself SPS
     in its papers.

2

**United States District Court**

For the Northern District of California

1    seeks to add allegations against Fairbanks.  The new allegations assert, in conclusory fashion, that

2    Fairbanks' violations of the Consumer Legal Remedies Act, Real Estate Settlement Procedures Act and

3    Debt Collections Practices Act each occurred subsequent to December 10, 2003.  (SAC, ¶¶ 37, 46, &

4    51.)[3]  On April 26, 2005, Cal Land filed an Opposition to Plaintiff's Motion for Leave to Amend, asserting

5    that the FAC was improperly filed without leave to amend because Cal Land had answered.  Cal Land also

6    argued that Plaintiff's request for leave to file both the FAC and the SAC should be denied.

7    I.    **Leave to Amend**

8         A.    **Legal Standard**

9         According to Federal Rule of Civil Procedure 15(a):

10

11         [a] party may amend the party's pleading once as a matter of course at any time before a
           responsive pleading is served or, if the pleading is one to which no responsive pleading is
12         permitted and the action has not been placed upon the trial calendar, the party may so
           amend it at any time within 20 days after it is served. Otherwise a party may amend the
13         party's pleading only by leave of court or by written consent of the adverse party; and leave
           shall be freely given when justice so requires.
14

15    Leave to amend a complaint "should be granted unless the court determines that the allegation of other facts

16    consistent with the challenged pleading could not possibly cure the deficiency."  Schreiber Distrib. Co. v.

17    Serv-Well Furniture Co., 806 F.2d 1393, 1401 (9th Cir. 1986).  The Court can consider factors such as

18    "the presence or absence of undue delay, bad faith, dilatory motive, repeated failure to cure deficiencies by

19    previous amendments, undue prejudice to the opposing party and futility of the proposed amendment."

20    Moore v. Kayport Package Express, 885 F.2d 531, 538 (9th Cir. 1989).  Leave to amend is properly

21    denied "where the amendment would be futile." DeSoto v. Yellow Freight Sys., 957 F.2d 655, 658 (9th

22    Cir. 1992).  "Futility of amendment can, by itself, justify the denial of a motion for leave to amend." Bonin

23    v. Calderon, 59 F.3d 815, 845 (9th Cir. 1995).

24         B.    **Discussion**

25              1.    **First Amended Complaint**

26

27    _____

28         [3]The SAC also includes a general allegation that Plaintiff "seeks remedies for harm caused by
      [Fairbanks] subsequent to December 10, 2003."  (SAC, ¶ 5.)

**United States District Court**
For the Northern District of California

1    Plaintiff filed the FAC on March 15, 2005. Plaintiff did not seek leave to amend the Complaint.[4]

2    The FAC added allegations against Fairbanks, WMC, and Cal Land. Ordinarily, a plaintiff may amend his

3    or her complaint once, as of right, any time prior to the filing of responsive pleadings. Fed. R. Civ. P.

4    15(a). A plaintiff can amend claims once as a matter of right against a defendant who has not filed a

5    responsive pleading, even if other defendants have filed a responsive pleading. Barksdale v. King, 699

6    F.2d 744, 747 (5th Cir. 1983). A motion to dismiss a complaint is not a responsive pleading. Miles v.

7    Dep't of Army, 881 F.2d 777, 781 (9th Cir.1989).

8                          **a.    WMC**

9    WMC filed a motion to dismiss prior to the filing of the FAC, but did not file an answer.[5] Thus, it is

10   clear that Defendant WMC did not file a responsive pleading prior to the filing of the FAC. Accordingly,

11   Plaintiff's amendments to claims against WMC were appropriately made as a matter of right.

12                          **b.    Fairbanks**

13   "A litigant cannot amend as a matter of right under Rule 15(a) after a summary judgment has been

14   rendered." Wright & Miller, Federal Practice and Procedure, § 2712; McDonald v. Hall, 579 F.2d 120,

15   121 (1st Cir. 1978); Clardy v. Duke University, 299 F.2d 368, 370 (4th Cir. 1962). Thus, while no leave

16   to amend may have been required to amend claims against WMC, leave was required to amend claims

17   against Fairbanks.[6] Accordingly, the Court next evaluates whether Plaintiff should be granted leave to

18   amend claims made against Fairbanks.

19   The only substantive allegations added in the FAC against Fairbanks relate to a new cause of action

20

21   [4]As discussed supra, Plaintiff seeks leave to amend the FAC, not the Complaint. However, in her
     motion for leave to amend the FAC, Plaintiff addresses her failure to seek leave to amend the Complaint.
22   Plaintiff asserts that no leave was required to file the FAC against WMC and Fairbanks, but acknowledges
     that leave was required to amend claims against Cal Land. (Motion for Leave, 5-6.)
23

24   [5]On March 23, 2005, the Court denied WMC's Motion to Dismiss as moot. [Docket No. 82].

25   [6]In her Motion for Leave, Plaintiff does not cite cases to the contrary. Instead, she cites cases
     holding that a complaint can be amended as of right following the granting of a motion to dismiss. (Motion
26   for Leave, 3-4.) The only case she cites relating to summary judgment is one in which the Ninth Circuit
     determined that a district court could simply strike a motion for leave to amend where summary judgment
27   had been granted and entered, and that amendment as a matter of right was also unavailable under those
     circumstances. (Id. (citing Lindauer v. Rogers, 91 F.3d 1355, 1357 (9th Cir. 1996).) Lindauer does not
28   hold that a plaintiff may amend as of right against a party who has obtained summary judgment of all claims
     made against it.

                                                    4

United States District Court
For the Northern District of California

1   for an accounting.  However, a cause of action against Fairbanks for an accounting is meaningless in light of

2   the fact that the Court has granted summary judgment in Fairbanks' favor as to the underlying substantive

3   claims.  In the March 7, 2005 Order, the Court found that the settlement in a previous class action barred

4   Plaintiff's claims against Fairbanks under the doctrines of res judicata and release.  (March 7, 2005 Order

5   at 7-10.)  The Court has already granted Fairbanks summary judgment on the causes of action for which

6   Plaintiff seeks an accounting of damages.  Accordingly, because leave to amend claims against Fairbanks is

7   required, and because granting leave in this instance would be futile, the Court strikes the additional

8   allegations made against Fairbanks in the FAC.  Bonin, 59 F.3d at 845.

9                **c.**    **Cal Land**

10      Cal Land filed an answer to the Complaint on January 7, 2005.  Thus, Plaintiff must be granted

11  leave in order to amend claims made against Cal Land.

12      The FAC adds Cal Land as a named defendant to the Third Cause of Action for violation of the

13  Truth in Lending Act ("TILA"), Home Ownership and Equity Protection Act ("HOEPA"), and Regulation

14  Z, and adds two additional causes of action against Cal Land for breach of fiduciary duty and negligence.

15  In each of the three causes of action, Plaintiff asserts that Cal Land failed to provide to her a mandated

16  written three-day right to cancel notice and failed to provide "accurate disclosures."  (FAC ¶¶ 42, 82, &

17  87.)

18      Cal Land asserts that the FAC was filed in error and leave to file it should be denied. Cal Land

19  asserts that amendment would be futile because an escrow holder cannot be liable for violation of the

20  provisions of the Truth in Lending Act, HOEPA, and Regulation Z that Plaintiff relies upon.  (Opp. to

21  Motion for Leave, 4.)  Cal Land also asserts that although it owes a fiduciary duty to the parties involved in

22  an escrow, such duties are limited.  (Id.)

23       An escrow holder, as a dual agent of the parties to the escrow, owes duties to the parties
          to the escrow. However, those duties are limited. [] The primary duty owed by an escrow

24       holder is to strictly and faithfully perform the instructions given to it by the parties to the
          escrow.

25

26  Vournas v. Fidelity Nat. Tit. Ins. Co., 73 Cal. App. 4th 668, 674 (1999)).  "An escrow holder has no

27  general duty to police the affairs of its depositors, however. [] An escrow holder's agency is limited to

28

1    faithful compliance with instructions." <u>Claussen v. First American Title Guaranty Co.</u>, 186 Cal. App. 3d

2    429, 435-436 (1986).

3         In the FAC, Plaintiff for the first time names Cal Land in the third cause of action for violations of

4    TILA, HOEPA, and Regulation Z.  (FAC, ¶ 43.)  First, these provisions apply to creditors or those who

5    "offer and extend credit," not to escrow holders.  15 U.S.C. § 1635(a), the provision of TILA that Plaintiff

6    relies upon, states that:

7         Disclosure of obligor's right to rescind. Except as otherwise provided in this section, in the
          case of any consumer credit transaction (including opening or increasing the credit limit for
8         an open end credit plan) in which a security interest, including any such interest arising by
          operation of law, is or will be retained or acquired in any property which is used as the
9         principal dwelling of the person to whom credit is extended, the obligor shall have the right
          to rescind the transaction until midnight of the third business day following the
10        consummation of the transaction or the delivery of the information and rescission forms
          required under this section together with a statement containing the material disclosures
11        required under this title [15 USCS §§ 1601 et seq.], whichever is later, by notifying the
          creditor, in accordance with regulations of the Board, of his intention to do so. *The*
12        *creditor shall clearly and conspicuously disclose,* in accordance with regulations of the
          Board, to any obligor in a transaction subject to this section the rights of the obligor under
13        this section. *The creditor shall also provide, in accordance with regulations of the*
          *Board, appropriate forms for the obligor to exercise his right to rescind any*
14        *transaction subject to this section.*

15    15 U.S.C. § 1635(a) (emphasis added).  15 U.S.C. § 1639, the provision of HOEPA that Plaintiff relies

16    upon, states:

17        Specific disclosures. In addition to other disclosures required under this title [15 USCS §§
18        1601 et seq.], for each mortgage referred to in section 103(aa) [15 USCS § 1602(aa)],
          *the creditor shall provide the following disclosures* in conspicuous type size . . .
19

20    15 U.S.C. § 1639(a)(1) (emphasis added.)  Finally, Regulation Z requires a "business which offers or

21    extends credit" to make certain disclosures:

22        Purpose. The purpose of this regulation is to promote the informed use of consumer credit
          by requiring disclosures about its terms and cost. The regulation also gives consumers the
23        right to cancel certain credit transactions that involve a lien on a consumer's principal
          dwelling, regulates certain credit card practices, and provides a means for fair and timely
24        resolution of credit billing disputes. The regulation does not govern charges for consumer
          credit. The regulation requires a maximum interest rate to be stated in variable-rate
25        contracts secured by the consumer's dwelling. It also imposes limitations on home equity
          plans that are subject to the requirements of § 226.5b and mortgages that are subject to the
26        requirements of § 226.32. The regulation prohibits certain acts or practices in connection
          with credit secured by a consumer's principal dwelling.
27

28        (c) Coverage. (1) In general, *this regulation applies to each individual or business*

6

**United States District Court**
For the Northern District of California

1    *that offers or extends credit* when four conditions are met: (I) The credit is offered or
     extended to consumers; (ii) the offering or extension of credit is done regularly; nl (iii) the
2    credit is subject to a finance charge or is payable by a written agreement in more than 4
     installments; and (iv) the credit is primarily for personal, family, or household purposes.

3

4    12 C.F.R. § 226.1(b) & (c) (emphasis added).  While Cal Land specifically identifies these provisions and

5    their inapplicability to Cal Land, Plaintiff makes no attempt in Reply to respond to Cal Land's argument that

6    these provisions do not apply to an escrow holder.  Instead she states that Cal Land was acting as a

7    fiduciary of WMC and therefore that it should have delivered certain documents to Plaintiff.  (Reply to

8    Motion for Leave, 4.)   However, the FAC fails to allege that Cal Land breached any fiduciary duty it

9    owed to Plaintiff.  It does not allege that WMC provided these documents to Cal Land and instructed Cal

10   Land to deliver the documents, or any other "disclosures," to Plaintiff.  Thus, Plaintiff's proposed

11   amendments to the FAC against Cal Land fail because: (1) TILA, HOEPA, and Regulation Z do not apply

12   to an escrow holder; and (2) the duties of the escrow are limited to faithfully carrying out the instructions of

13   the principals and there are no allegations that Cal Land was instructed by WMC to provide any

14   documents or to make any disclosures to Plaintiff.

15        In addition, Cal Land asserts that Plaintiff's claims are barred by the statute of limitations.  (Opp. to

16   Motion for Leave, 6.)  Under California law, the statute of limitations for escrow liability ranges from two to

17   four years, depending on the theory of recovery.  For an action based on a breach of oral instructions, the

18   statute of limitations is two years.  Cal. Code Civ. Proc. § 339.  For breach of a written escrow instruction,

19   the statute of limitations is four years.  Amen v. Merced Title County Title Co., 58 Cal.2d 528, 534

20   (1962).  "The statute of limitations for breach of fiduciary duty is four years."  Stallberg v. Western Title

21   Ins. Co., 230 Cal. App. 3d 1223, 1230 (1991) (citing California Civil Code § 343).

22        Here, the conduct alleged against Cal Land occurred in June 1997.  (FAC, ¶ 42.)  Plaintiff's FAC

23   was filed on March 15, 2005, nearly eight years after the relevant conduct occurred.  In Reply, Plaintiff

24   asserts that the statute of limitations should be tolled because Plaintiff did not discover Cal Land's alleged

25   misconduct until "some ten months prior to the filing of this case in state court." (Reply to Motion for

26   Leave, 5.)[7]  Plaintiff's FAC asserts:

27

28   [7]Plaintiff's state court action was filed on July 23, 2004, and removed on September 3, 2004.  Ten
     months before July 2004 is September 2003.

7

Plaintiff did not discover her causes of action against defendants Fairbanks Capital Corp., Fairbanks Capital Holding Corp., and California Land Title Company until approximately ten months ago when defendant WMC produced documents that plaintiff had been requesting for nearly a year pursuant to written discovery.[8] These documents show that the Fairbanks defendants subsequently became the servicer for plaintiff's loan and that California Land Title Company of Marin had improperly processed escrow documents required for a loan that plaintiff had obtained from WMC.

(FAC, ¶ 10.)  "[T]he doctrine of delayed discovery requires a plaintiff to plead facts showing an excuse for late discovery of the facts underlying his cause of action.  He must show that [he] was not at fault for failing to discover it or had no actual or presumptive knowledge of facts sufficient to put him on inquiry."  Prudential Home Mortgage Co. v. Superior Court, 66 Cal. App. 4th 1236, 1247 (1998) (internal quotation omitted).  Here, Plaintiff's FAC fails to plead such facts.  As a preliminary matter, the factual predicate for Cal Land's failure to provide her with certain documents should have been known to her in 1997 without the need for discovery – she should have known what she did or did not receive in June 1997 well before September 2003.  Moreover, Paragraph 10 fails to make clear what facts were discovered by Plaintiff that made her aware of her claims against Cal Land.  Plaintiff's reference to "improperly processed escrow documents" fails to put Cal Land on notice of what documents were improperly processed, or what was improper about such processing.  In Reply, Plaintiff asserts that "Cal Land had improperly processed escrow documents, particularly the right to rescind notice." (Reply to Motion for Leave, 5.)  To the extent Plaintiff asserts that the "improper processing" was the failure to provide the right to rescind notice, Plaintiff should have been aware of this failure long before.  Moreover, as discussed supra, there are no factual allegations suggesting that Cal Land breached any duty to provide Plaintiff with the right to rescind notice.  Accordingly, because leave to amend claims against Cal Land is required, and because granting leave in this instance would be futile, the Court strikes the additional allegations made against Cal Land in the FAC.  Bonin, 59 F.3d at 845.

### 2.      Proposed Second Amended Complaint

In her Request for Leave to Amend the FAC, Plaintiff seeks to add allegations against Fairbanks.  The new allegations assert, in conclusory fashion, that Fairbanks' violation of the Consumer Legal

---

[8]Although not entirely clear, it appears that this discovery related to an earlier action between Plaintiff and WMC.

8

1  Remedies Act, Real Estate Settlement Procedures Act and Debt Collections Practices Act, each occurred

2  subsequent to December 10, 2003. (SAC, ¶¶ 37, 46, & 51.)  However, Plaintiff does not allege any facts

3  whatsoever in support of these assertions – Plaintiff fails to describe any acts committed by Fairbanks that

4  occurred subsequent to December 10, 2003.[9]  Accordingly, Plaintiff's proposed amendments to the FAC

5  are futile, and leave to amend is denied.

6      **C.**    **Conclusion**

7      For the foregoing reasons, the Court strikes those portions of the FAC that add allegations against

8  Fairbanks and Cal Land, and denies Plaintiff's Motion for Leave to amend the FAC.

9  **II.**    **Fairbanks' Motion for Entry of Final Judgment**

10      **A.**    **Legal Standard**

11      Fed. R. Civ. P. 54(b) allows the district court to sever a final judgment with respect to particular

12  claims (or parties) for an immediate appeal. James v. Price Stern Sloan, 283 F.3d 1064, 1066, n.4 (9th

13  Cir. 2002).  Rule 54(b) states:

14

15      (b) Judgment Upon Multiple Claims or Involving Multiple Parties. When more than one
16      claim for relief is presented in an action, whether as a claim, counterclaim, cross-claim, or
    third-party claim, or when multiple parties are involved, the court may direct the entry of a
17      final judgment as to one or more but fewer than all of the claims or parties only upon an
    express determination that there is no just reason for delay and upon an express direction
18      for the entry of judgment. In the absence of such determination and direction, any order or
    other form of decision, however designated, which adjudicates fewer than all the claims or
19      the rights and liabilities of fewer than all the parties shall not terminate the action as to any of
    the claims or parties, and the order or other form of decision is subject to revision at any
20      time before the entry of judgment adjudicating all the claims and the rights and liabilities of
    all the parties.

21

22  Thus, in order for Rule 54(b) to apply, there must either be multiple claims or multiple parties involved.

23  Fed. R. Civ. P. 54(b).  In addition, the court must determine whether there is a "final judgment" that can be

24  entered. See Curtiss-Wright Corp. v. General Elec. Co., 446 U.S. 1, 7 (1980).  For purposes of Rule

25  ────────────────────────

26      [9]To the extent that Plaintiff asserts that her harm merely continued subsequent to December 10,
2003 for acts that occurred prior to that time (Declaration of John G. Warner in Support of Motion for
27  Leave to Amend, ¶ 5), this too is barred by the doctrine of release. While acts or omissions by Fairbanks
subsequent to December 10, 2003 were not barred by the previous settlement, harms resulting from
28  conduct that occurred between January 1, 1999 and December 10, 2003 are barred. (See Curry
Settlement Agreement, ¶¶ 9, 13-14 & 30; March 7, 2005 Order at 5, n. 4.)

**United States District Court**
For the Northern District of California

1  54(b), a final judgment is one that disposes of at least one claim in a multi-claim action or at least one party

2  in a multi-party action. See Continental Airlines, Inc., 819 F.2d at 1524; Credit Francais Int'l, S.A. v.

3  Bio-Vita, Ltd., 78 F.3d 698, 706 (1st Cir. 1996); (citing Wright & Miller, Federal Practice and Procedure,

4  § 2656).

5      Once the district court determines that there is a final judgment, the Court next determines whether

6  there is any just reason for delay. Curtis-Wright Corp., 446 U.S. at 8. In deciding whether there are no

7  just reasons to delay the appeal of individual final judgments, a district court "must take into account judicial

8  administrative interests as well as the equities involved." Id., (internal quotation omitted). at 797-98

9  (internal quotation omitted). This determination by the district court is granted deference because "it is the

10  one most likely to be familiar with the case and with any justifiable reasons for delay." Texaco, Inc. v.

11  Ponsoldt, 939 F.2d 794, 797 (9th Cir. 1991) (quotations omitted).

12  **B.**    **Discussion**

13      **1.**    **Timeliness of Plaintiff's Opposition**

14      Fairbanks asserts that Plaintiff's Opposition to its Motion for Entry of Final Judgment was untimely

15  and should be stricken. (See Motion for Entry of Final Judgment, 1.) Pursuant to Local Rule 7-3, an

16  Opposition to a Motion must be filed 21 days prior to the date of the hearing. In the instant case,

17  Fairbanks' motion was set to be heard on April 26, 2005.[10] Thus, any Opposition was due on April 5,

18  2005. Plaintiff, however, filed her Opposition on April 12, 2005, and did not seek leave to file such

19  Opposition late. Accordingly, Plaintiff's Opposition is stricken.

20      **2.**    **Merits of Fairbanks' Motion**

21      Nonetheless, the Court evaluates the merits of Fairbanks' Motion. Fairbanks asserts that entry of

22  final judgment is appropriate because the Court's March 7, 2005 Order resolved all of Plaintiff's claims

23  against Fairbanks. (Id.)

24      First, entry of final judgment is appropriate because this is an action with multiple parties, and the

25  Court's March 7, 2005 Order resolved all claims against one of those parties, Fairbanks. See Fed. R. Civ.

26  P. 54(b). Moreover, as discussed supra, Plaintiff has been denied leave to amend the Complaint as to

27

28      [10]On April 18, 2005, the Court continued the hearing to May 17, 2005 so that this motion could be adjudicated at the same time as Plaintiff's Motion for Leave to Amend.

**United States District Court**
For the Northern District of California

1    claims against Fairbanks. Accordingly, all claims against Fairbanks have been resolved in its favor.

2        Second, there is no just reason for delaying entry of final judgment. In evaluating whether there is

3    no just reason for delay, the Court must consider both the preservation of judicial economy as well as the

4    equities involved. Curtiss-Wright Corp. v. General Elec. Co., 446 U.S. 1, 8 (1980). In the instant case,

5    entry of final judgment will serve judicial economy by streamlining the litigation and focusing the litigation on

6    the remaining defendants. Alcan Aluminum Corp. v. Carlsberg Financial Corp., 689 F.2d 815, 817 (9th

7    Cir. 1982). Moreover, the balance of the equities also favors entry of final judgment because Fairbanks

8    will be required to unnecessarily wait for the adjudication of claims against the remaining defendants,

9    despite the fact that its defenses of res judicata and release bar Plaintiff's claims against Fairbanks.

10    Meanwhile, even if the Court were to consider Plaintiff's Opposition, it fails to identify any prejudice that

11    Plaintiff will suffer as a result of entry of final judgment. Accordingly, the Court finds that entry of final

12    judgment in favor of Fairbanks is appropriate in the instant action.

13                           **CONCLUSION**

14        For the foregoing reasons, the Court STRIKES those portions of the FAC that add allegations

15    against Fairbanks and Cal Land, and DENIES Plaintiff's Motion for Leave to Amend. Plaintiff is ordered

16    to file a Second Amended Complaint that removes the stricken allegations within 15 days from the date of

17    this Order. The Court also GRANTS Fairbanks' Motion for Entry of Final Judgment.

18        The Case Management Conference is CONTINUED TO **July 27, 2005 at 3:30 p.m.**, and will

19    proceed **telephonically**. The parties shall **meet and confer** prior to the conference and shall prepare a

20    joint Case Management Conference Statement which shall be filed no later than ten (10) days prior to the

21    Case Management Conference. Plaintiff shall be responsible for filing the statement as well as for arranging

22    the conference call. All parties shall be on the line and shall call (510) 637-3559 at the above indicated

23    date and time.

24        IT IS SO ORDERED.

25

26    Dated: 5-26-05                  /s/ Saundra Brown Armstrong
                                  SAUNDRA BROWN ARMSTRONG
                                  United States District Judge

27

28

# EXHIBIT "F"

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

FILED

JAN 19 2006

RICHARD W. WIEKING
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
OAKLAND

PATRICIA BARBERA,

      Plaintiff,

v.

WMC MORTGAGE CORP., et al.,

      Defendants.

No. C 04-3738 SBA

**ORDER**

[Docket No. 111]

    This matter is before the Court on Defendants' WMC Mortgage Corp., WMC Finance Co., and WMCDirect (collectively "Defendants") motion to dismiss Plaintiff Patricia Barbera's ("Plaintiff") Second Amended Complaint ("SAC") for failure to state a claim upon which relief can be granted.  Having read and considered the arguments presented by the parties in the papers submitted to the Court, the Court finds this matter appropriate for resolution without a hearing.  The Court hereby GRANTS Defendants' motion to dismiss.  Plaintiff's third, fourth and fifth claims are DISMISSED WITH PREJUDICE.  The case is REMANDED to the Superior Court of the State of California in and for the County of San Francisco.

## BACKGROUND

### A.    Factual Background[1]

### 1.    The Parties

    Plaintiff is a 73-year old woman residing at all material times in the County of Marin, California.

---

[1] The following facts are taken from Plaintiff's SAC.

United States District Court
For the Northern District of California

1    Defendant WMC Mortgage Corp. ("WMC") is an entity formed in part by Defendant Apollo

2    Management L.P.  WMC is in the business of making subprime loans on residential property and

3    also acts as the administrator for those loans.  Defendant WMCDirect, owned and operated by

4    WMC, is an online nationwide business services website for mortgage brokers.  SAC ¶ 3.  On June

5    14, 2004, Defendant GE Consumer Finance Co., the consumer lending unit of the General Electric

6    Company, purchased Defendant WMC Finance Co., including Defendants WMC and WMCDirect,

7    from affiliates of Apollo Management L.P.  SAC ¶ 4.

8        **2.    Allegations**

9        In June of 1997, Plaintiff was in a "desperate financial situation" and obtained a loan from

10   WMC for $322,500.  SAC ¶ 13.  On June 12, 1997, Plaintiff executed the loan documents, at which

11   time "defendants failed to provide to Plaintiff two written notices of Plaintiff's right to rescind within

12   three days of closing, and defendants failed to prepare and deliver accurate disclosures that were

13   mandated" under the Truth in Lending Act, 15 U.S.C. section 1601 *et seq.*  SAC ¶ 14.

14       On May 19, 1998, WMC notified Plaintiff that it had not received proof of her renewal of the

15   hazard insurance policy on Plaintiff's home.  SAC ¶ 15.  Despite numerous telephone calls from

16   Plaintiff to WMC, and verification provided to WMC by Plaintiff's insurance company that a copy of

17   Plaintiff's insurance policy had been mailed to WMC, WMC "force-place[d] a substitute policy from

18   another hazard insurance company at Plaintiff's expense." *Id.*  This new policy had a premium of

19   $2,242, nearly three times the annual premium of Plaintiff's policy. *Id.*

20       In January of 1999, Plaintiff received a letter from WMC stating that WMC had received

21   confirmation of Plaintiff's hazard insurance coverage and that WMC had cancelled both the force-

22   placed insurance and its charge to Plaintiff for that policy. *Id.* ¶ 16.  However, WMC in fact did not

23   cancel the $2,242 charge to Plaintiff's account and continued to impose an annual charge on

24   Plaintiff's account for this hazard insurance. *Id.* ¶ 17.

25       On August 19, 1999, WMC served on Plaintiff a ten-day default notice, listing the amount

26   alleged due on Plaintiff's mortgage, but, according to Plaintiff, the listed amounts due were false. *Id.*

27   ¶ 18.  On November 5, 1999, using these excessive amounts as a pretext, WMC and its foreclosure

28

United States District Court
For the Northern District of California

1  agent, Millennium Foreclosure Services, LLC ("Millennium")[2], served Plaintiff with a notice of

2  default in the amount of $42,114.79. *Id.* On December 4, 1999, Plaintiff sent a detailed letter to

3  WMC and Millennium, which constituted a "qualified written request" within the meaning of Real

4  Estate Settlement Procedures Act ("RESPA") 12 U.S.C. section 2605(e), whereby she denied owing

5  the amount shown in the default notice and renewed her previous oral requests to WMC for an

6  accurate accounting. *Id.* ¶ 19. Plaintiff alleges WMC violated RESPA beginning in June of 1999

7  through March 1, 2002 by failing to respond to Plaintiff's oral requests for an accounting, and failing

8  to acknowledge or to respond within the statutory time limits to Plaintiff's "qualified written

9  request."[3] *Id.* ¶ 21. Furthermore, WMC continued to bill Plaintiff for improper charges and began to

10  carry out a foreclosure sale of Plaintiff's home based upon these improper charges. *Id.*

11       On February 11, 2000, Plaintiff received from Millennium a Notice of Trustee's sale,

12  recorded on February 7, 2000 citing a sale date of March 2, 2000 in the amount of $372,316.39. *Id.* ¶

13  23.

14       On February 27, 2000, Plaintiff sent via facsimile to WMC a copy of a telegram informing

15  WMC that it had failed to respond to Plaintiff's previous letters, had failed to provide an accurate

16  accounting, and had violated various laws and regulations. *Id.* ¶ 24. On March 1, 2000, WMC

17  supplied Plaintiff with a statement of history of payments on the loan, but Plaintiff contends the

18  statement was incomprehensible. *Id.* ¶ 25.

19       On March 2, 2000, Plaintiff notified WMC that she had filed a Chapter 13 bankruptcy

20  petition and verified that the foreclosure had been cancelled. *Id.* ¶ 26. On April 11, 2000, Plaintiff

21  asserts that, in violation of the automatic bankruptcy stay, WMC filed a Notice of Trustee's Sale

22

23

24

25

26      [2] Millennium is not a party in this action.

27      [3] 12 U.S.C. section 2605(e) of RESPA states a loan servicer shall provide a written response
acknowledging receipt of the "qualified written request" within 20 days, and shall respond to such a

28  request within 60 days, excluding legal public holidays, Saturdays, and Sundays. *See* 12 U.S.C. §
2605(e); SAC ¶ 20.

United States District Court
For the Northern District of California

1    scheduled for May 10, 2000. *Id.*[4]

2    **B.    Procedural History**

3        Plaintiff filed the initial complaint in this case on July 23, 2004 in San Francisco Superior

4    Court against WMC, WMC Finance Co., Apollo Management L.P., WMCDirect, GE Consumer

5    Finance, Fairbanks Capital Corp., Fairbanks Capital Holding Corp., and California Land Title

6    Company of Marin ("Cal Land").  On September 3, 2004, the action was removed to this Court.  On

7    January 7, 2005, after several stipulated extensions of time to respond to the complaint, Cal Land

8    filed an Answer to the Complaint.

9        On January 10, 2005, then defendants Fairbanks Capital Corporation and Fairbanks Capital

10   Holding Corporation (collectively "Fairbanks") filed a motion for summary judgment, in which they

11   claimed Plaintiff's suit was barred under the principles of res judicata and release because Plaintiff

12   was a member of a nationwide class action, which challenged the same conduct, and which was

13   subsequently settled.  Because Plaintiff did not dispute that she was a member of the prior class

14

15       [4] Plaintiff alleges additional facts raised for the first time in her opposition to Defendants'

16   motion.  Specifically, Plaintiff alleges: (1) Defendants "postdated receipt of payments, to make it appear that they were delinquent and late charges are applied in addition to other obtuse designations" (Pl. Opp.

17   filed Oct. 11, 2005, ¶ 5); (2) Defendants "misapplied the extra which I included with my payments" (*Id.*

18   ¶ 7); (3) Defendants "had [Plaintiff's] bankruptcy stay lifted by use of false figures" (*Id.* ¶ 8); (4) "on adjustable interest rate notices, [Defendants] failed to include: index used, index rate, interest rate, (current and projected), and margin applied" (*Id.* ¶ 10); (5) Defendants harassed Plaintiff with automatic

19   message telephone calls (*Id.* ¶ 11); (6) Defendants refused to provide Plaintiff with information concerning the amount due under her loan (*Id.* ¶ 12); (7) on February 24, 2000, Plaintiff's attorney "faxed

20   a factual protest and 'let's talk' letter" to Defendants regarding the February 11, 2000 Notice of Trustee's Sale, to which there was no response (*Id.* ¶ 19); (8) on March 2, 2000 Plaintiff was informed by her

21   attorney that her attorney had spoken with a representative of Defendants who stated "the total arrears is $68,811.61, which includes an advance for homeowners insurance in the amount of $7,411.04 and

22   foreclosures fees of $3,403.29" (*Id.* ¶ 21); (9) in May 2000 WMC "reported to the Credit Bureaus that [Plaintiff] was delinquent in the amount of $72,050" (*Id.* ¶ 26); (10) on December 15, 2000, Plaintiff

23   sent WMC "a one line notice of rescission taken verbatim from the unexecuted form which [she] had received, 'I wish to cancel'" (*Id.* ¶ 29); (11) On January 5, 2001, Plaintiff received a letter dated January

24   2, 2001, from WMC Senior Vice President & General Counsel, Michael L. Mayer, which included an executed Notice of Right to Cancel and informed Plaintiff that her cancellation notice was "invalid and

25   of no legal effect." (*Id.* ¶ 30).
         None of the above facts are alleged in Plaintiff's SAC but are raised for the first time in her

26   opposition.  "It is axiomatic that the complaint may not be amended by briefs in opposition to a motion to dismiss."  *Car Carriers, Inc. v. Ford Motor Co.*, 745 F.2d 1101, 1107 (7th Cir. 1984).  That Plaintiff

27   is proceeding *in pro per* does not render the rules of the Court inapplicable.  *See King v. Atiyeh*, 814 F.2d 565, 567 (9th Cir. 1987) (Pro per litigants must follow the same procedural rules as represented parties.)

28   Consequently, the Court shall limit its review to those facts properly alleged in the SAC, and not those newly raised in Plaintiff's opposition.

United States District Court

For the Northern District of California

1  action against Fairbanks, which involved identical claims and ended in a final judgment on the

2  merits, by Order dated March 7, 2005, the Court granted Fairbanks' motion for summary judgment,

3  finding that Plaintiff's claims against Fairbanks were barred by the doctrines of res judicata and

4  release [docket no. 71.]

5       On March 15, 2005, Plaintiff filed a First Amended Complaint ("FAC"). The FAC included

6  additional allegations against Defendant WMC, an additional cause of action for an accounting

7  against WMC and Fairbanks, named Cal Land in the third cause of action for violations of, *inter*

8  *alia,* the Truth in Lending Act, and added two additional causes of action against Cal Land for

9  breach of fiduciary duty and negligence. On March 21, 2005, Fairbanks filed a motion for entry of

10 final judgment pursuant to Federal Rule of Civil Procedure 54. On April 12, 2005, Plaintiff filed an

11 opposition to Fairbanks' motion, and also filed a motion for leave to amend the FAC. In her request

12 for leave to amend the FAC, Plaintiff sought to add new allegations against Fairbanks and the other

13 defendants. On May 26, 2005, the Court denied Plaintiff's Motion for Leave to Amend the FAC,

14 struck those portions of the FAC that added allegations against Fairbanks and Cal Land, and granted

15 Fairbanks' motion for entry of final judgment [docket no. 96.] Plaintiff was ordered to file a Second

16 Amended Complaint that removed the stricken allegations.

17       On June 1, 2005, Plaintiff substituted herself as counsel in place of her previously retained

18 counsel [docket no. 97.]

19       Plaintiff filed the SAC on August 10, 2005 [docket no. 108.] On August 25, 2005,

20 Defendants filed the instant motion to dismiss. Defendants also filed a Request for Judicial Notice.[5]

21

22       [5] In Defendants' Request for Judicial Notice, Defendants request that the Court take judicial
23 notice of exhibits: (A) Plaintiff's complaint on file in state court, *Barbera v. WMC Mortgage. Corp.,*
   San Francisco Superior Court Civil Action No. 322066, filed June 11, 2001; (B) this Court's Order dated
24 March 1, 2005, Granting Fairbanks' Motion for Summary Judgment; (C) this Court's Order dated May
   26, 2005, Granting Fairbanks' Motion for Entry of Final Judgment; (D-E) Copies of Assembly Bill No.
25 292 (1970 Reg. Sess. (Jan. 21, 1970)) and Assembly Bill No. 292 (1970)) (as amended Aug. 7, 1970);
   (F) Notice of Entry of Order Granting Defendant WMC's Motions *In Limine* Nos. 1, 2 & 4, Denying
26 WMC's Motion *In Limine* 3, and Denying Plaintiff's Motion for Leave to Amend, entered by Judge
   Busch in Plaintiff's action in San Francisco Superior Court; (G) text of Proposition 2; and (H) California
27 Department of Real Estate website printout.
        Federal Rule of Evidence 201 authorizes the court to judicially notice only those "adjudicative
28 facts" that are either "(1) generally known within the territorial jurisdiction of the trial court or (2)
   capable of accurate and ready determination by sources whose accuracy cannot reasonably be

5

1    Plaintiff filed an opposition with this Court on October 11, 2005.[6]

2                                **LEGAL STANDARD**

3    A.    **Rule 12(b)(6)**

4            Under Federal Rule of Civil Procedure 12(b)(6), a motion to dismiss may be granted

5    if it appears beyond a doubt that the plaintiff "can prove no set of facts in support of his

6    claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957). For

7

8    questioned." Fed. R. Evid. 201(b). "Adjudicative facts are usually those facts that are in issue in a
      particular case." *Korematsu v. United States*, 584 F. Supp. 1406, 1414 (N.D. Cal. 1984) (Patel, J.).

9            With regard to Exhibit A, Defendants do not make clear to this Court for what purpose they are
      requesting this Court take judicial notice of Plaintiff's state court complaint. Defendants simply state

10   Plaintiff has filed, with and without counsel, several civil actions against WMC and the parties have
      conducted considerable discovery since the first action was filed in June of 2001. Defs. Mot. 2:14-20.

11   The existence of Plaintiff's state court complaint does not concern any "facts in issue" in this case, nor
      is it relevant to the instant motion to dismiss. Consequently, the request is DENIED as to Exhibit A.

12           As the March 1, 2005 and May 26, 2005 Orders are part of the Court's own docket in this matter,
      a formal request for judicial notice is unnecessary.

13           Defendants cite to Exhibits D, E and F in support of their argument that Plaintiff's Consumer
      Legal Remedies Act ("CLRA") claim must fail because credit transactions do not fall within CLRA's

14   purview.  Defs. Mot 13:5-24.  The CLRA is a California statute which was irrelevant to the Court's
      analysis and disposition of Plaintiff's federal claims.  Therefore, the request for judicial notice is

15   DENIED as to Exhibits D, E & F.

16           Finally, Defendant cites to Exhibits G &H in support of their argument that Plaintiff's claim of
      usury must fail as California has exempted from the usury laws licensed real estate brokers by the State

17   of California, and, Defendants argue, WMC was a licensed real estate broker at the time the loan was
      made.  The usury cause of action is based on state law.  Again, given the Court's focus upon Plaintiff's

18   federal claims, these exhibits are irrelevant.  For these reasons, the request for judicial notice is DENIED
      as to Exhibits G & H.

19          [6] Defendants contend Plaintiff served upon them a different version of her opposition brief than

20   the one she filed with this Court. Defendants attached the version of the opposition they received as
      Exhibit A to the Declaration of Seta Arabian in Support of Defendants' Reply ("Arabian Decl.") In the

21   version filed with the Court on October 11, 2005, in the "Foreclosure-bankruptcy issues" section,
      Plaintiff includes two new paragraphs that are not present in the copy faxed to Defendants and

22   attached to the Arabian Decl. These new sections concern Plaintiff's research into WMC's past and
      current litigation, and what Plaintiff believes to be the relevant California laws that have been violated

23   by the conduct of Defendants alleged in the SAC. Additionally, in the opposition filed with the Court
      but not in the version faxed to Defendants, Plaintiff attached copies of: 1) an article entitled "Loans Cost

24   Minorities More" by David Olinger and Jeffrey A. Roberts, Denver Post Staff Writers, Feb. 27, 2001;
      2) a transcript of the testimony of Professor Cathy Lesser Mansfield before the Committee on Banking

25   and Financial Services, United States House of Representatives, May 24, 2000, at the Rayburn House
      Office Building; and 3) copies of statements received by Plaintiff from WMC and Select Portfolio

26   Servicing. Inc.
             These additional paragraphs and material were the only differences between the briefs received

27   by Defendants and filed with the Court and were not germane to the Court's analysis of Defendants'
      motion to dismiss as they did not address the substantive issues raised by Defendants' in their motion.

28   Consequently, for purposes of deciding this motion, the Court restricted its review to the opposition
      served upon Defendants.

1   purposes of such a motion, the complaint is construed in a light most favorable to the

2   plaintiff and all properly pleaded factual allegations are taken as true. *Jenkins v. McKeithen*,

3   395 U.S. 411, 421 (1969); *Everest and Jennings, Inc. v. American Motorists Ins. Co.*, 23

4   F.3d 226, 228 (9th Cir. 1994). All reasonable inferences are to be drawn in favor of the

5   plaintiff. *Jacobson v. Hughes Aircraft*, 105 F.3d 1288, 1296 (9th Cir. 1997).

6       When a complaint is dismissed for failure to state a claim, "leave to amend should be

7   granted unless the court determines that the allegation of other facts consistent with the

8   challenged pleading could not possibly cure the deficiency." *Schreiber Distrib. Co. v.*

9   *Serv-Well Furniture Co.*, 806 F.2d 1393, 1401 (9th Cir. 1986). The court should consider

10  factors such as "the presence or absence of undue delay, bad faith, dilatory motive, repeated

11  failure to cure deficiencies by previous amendments, undue prejudice to the opposing party

12  and futility of the proposed amendment." *Moore v. Kayport Package Express*, 885 F.2d

13  531, 538 (9th Cir. 1989). Of these factors, prejudice to the opposing party is the most

14  important. *See Jackson v. Bank of Hawaii*, 902 F.2d 1385, 1387 (9th Cir. 1990) (citing

15  *Zenith Radio Corp. v. Hazeltine Research, Inc.*, 401 U.S. 321, 330-31 (1971)). Leave to

16  amend is properly denied "where the amendment would be futile." *DeSoto Yellow Freight*

17  *Sys.*, 957 F.2d 655, 658 (9th Cir. 1992).

18                                  **ANALYSIS**

19      The SAC asserts the following federal claims against WMC: (1) violation of the

20  Truth in Lending Act ("TILA"), 15 U.S.C. §§ 1601 *et seq.*; (2) violation of the Real Estate

21  Settlement Procedures Act, 12 U.S.C. §§ 2601, *et seq.*; and (3) violation of the Fair Debt

22  Collection Practices Act, 15 U.S.C. §§ 1692 *et seq.* ("FDCA").

23  A.   **Plaintiff's First Federal Claim - Violation of the Truth In Lending Act**

24       1.   The Statutes

25       In her third cause of action Plaintiff alleges violation of the Truth in Lending Act

26

27

28

United States District Court

For the Northern District of California

1  ("TILA"), HOEPA, and Regulation Z.[7]  SAC, ¶¶ 41-43.  15 U.S.C. § 1635(a), the provision

2  of TILA upon which Plaintiff relies, states in full:

3         Disclosure of obligor's right to rescind. Except as otherwise provided in this
           section, in the case of any consumer credit transaction (including opening or
4          increasing the credit limit for an open end credit plan) in which a security
           interest, including any such interest arising by operation of law, is or will be
5          retained or acquired in any property which is used as the principal dwelling of
           the person to whom credit is extended, *the obligor shall have the right to*
6          *rescind the transaction until midnight of the third business day following*
           *the consummation of the transaction or the delivery of the information and*
7          *rescission forms required under this section together with a statement*
           *containing the material disclosures required under this subchapter,* [15
8          U.S.C. §§ 1601 et seq.] whichever is later, by notifying the creditor, in
           accordance with regulations of the Board, of his intention to do so. The
9          creditor shall clearly and conspicuously disclose, in accordance with
           regulations of the Board, to any obligor in a transaction subject to this section
10         the rights of the obligor under this section. The creditor shall also provide, in
           accordance with regulations of the Board, appropriate forms for the obligor to
11         exercise his right to rescind any transaction subject to this section.

12

13  15 U.S.C. § 1635(a) (emphasis added).  15 U.S.C. § 1639(a)(1), the provision of HOEPA

14  upon which Plaintiff relies, states in relevant part:

15         Specific disclosures. In addition to other disclosures required under this
           subchapter [15 U.S.C. §§ 1601 et seq.], for each mortgage referred to in
16         section 1602(aa) of this title, the creditor shall provide . . . disclosures in
           conspicuous type size . . .

17  15 U.S.C. § 1639(a)(1).  Finally, Regulation Z requires a "business which offers or extends

18  credit" to make certain disclosures:

19         Purpose. The purpose of this regulation is to promote the informed use of
           consumer credit by requiring disclosures about its terms and cost. The
20         regulation also gives consumers the right to cancel certain credit transactions
           that involve a lien on a consumer's principal dwelling, regulates certain credit
21         card practices, and provides a means for fair and timely resolution of credit
           billing disputes.
22

23  12 C.F.R. § 226.1(b) & (c).

24         2.    Analysis

25  Plaintiff seeks both rescission of her loan and damages.  15 U.S.C. § 1640(e).

26  _____
     [7]  The acronym "HOEPA" stands for "Home Ownership and Equity Protection Act" of 1994.
27  HOEPA, which took effect on October 1, 1995, provides special protections for consumers who obtain
     high-rate or high-fee loans secured by their principal dwellings by requiring creditors to provide certain
28  material information at least three days before the loan is consummated, prohibiting the use of certain
     loan terms, and barring specified practices.

United States District Court
For the Northern District of California

1  Plaintiff's right of rescission is governed by 15 U.S.C. § 1635(f). This section provides, in

2  relevant part:

3         An obligor's right of rescission shall expire three years after the date
          of consumption of the transaction or upon the sale of the property,
4         whichever occurs first, notwithstanding the fact that the information
          and forms required under this section or any other disclosures
5         required under this part have not been delivered to the obligor.

6  15 U.S.C. § 1635(f). Civil penalties under TILA and HOEPA are subject to a one-year

7  statute of limitations. Plaintiff's loan closed in June of 1997. Plaintiff filed suit in state

8  court on July 23, 2004, which was removed to this Court in September of 2004, over seven

9  years later. Consequently, both Plaintiff's claim for damages, as well as her right to rescind,

10 are time-barred by these sections.

11      Plaintiff's SAC conclusorily asserts "[a]ny statute of limitations applicable to these

12 violations has been tolled under the doctrine of what is called equitable tolling." SAC ¶ 42.[8]

13 Plaintiff's defense to the statute of limitations is unpersuasive. "The equitable tolling

14 doctrine has been applied by the Supreme Court in certain circumstances, [ ] but it has been

15 applied sparingly." *Scholar v. Pacific Bell*, 963 F.2d 264, 268 (9th Cir.1992) (citing *Irwin v.*

16 *Veterans Admin.*, 498 U.S. 89, 111 S.Ct. 453, 457-58, 112 L.Ed.2d 435 (1990)). "Courts

17 have been generally unforgiving, however, when a late filing is due to claimant's failure 'to

18 exercise due diligence in preserving his legal rights.' " *Id.* (citing *Irwin*, 111 S.Ct. at 458).

19 "Equitable tolling focuses primarily on the plaintiff's excusable ignorance of the limitations

20 period." *Lehman v. United States*, 154 F.3d 1010, 1016 (9th Cir. 1998).

21

22

23      [8] In her opposition she states 11 U.S.C. § 108 extends the statute of limitations for commencing
        or continuing an action by the debtor. However, as Plaintiff concedes, that statute is available for
24      trustees suing to protect a bankruptcy estate. Plaintiff does not assert she is a trustee.
              Additionally, Plaintiff argues that the force-placed insurance charge "could constitute a new
25      transaction which would require new disclosures and a new consummation date." Pl. Opp. Sec. IV ¶ 6.
        Plaintiff does not indicate when that consummation date would have occurred, either the date of the
26      charge or the date Plaintiff discovered the charge on her account. Construing the facts in the most
        favorable light to Plaintiff, the latest date for which she could allege the force-placed insurance charge
27      constituted a new transaction would be the date she learned of it, March 2, 2000. That was over four
        years prior to the filing of the instant complaint in state court. Therefore, even if Plaintiff were able to
28      argue that imposition of the force-placed insurance charge constitutes a new transaction requiring new
        disclosures and a new consummation date, she is nevertheless barred by the statute of limitations.

1    Here, Plaintiff's SAC fails to plead such facts. As a preliminary matter, the factual

2 predicate for her claim that WMC failed to provide her with certain documents should have

3 been known to her in 1997, well before July 2004. In her opposition, Plaintiff states that she

4 signed the "Notice of Right to Cancel" on June 12, 1997 and acknowledged, by her

5 signature, receipt of two copies of the this notice. Pl. Opp. ¶ 1. This acknowledgment is

6 evidence that Plaintiff received two copies of this notice, or, at a minimum, was aware that

7 she was entitled to two copies of this notice at the time of the loan closing. Plaintiff alleges

8 that she was not given any documents on June 12, 1997, contrary to her signed

9 acknowledgment, but concedes that when she did receive her copy of her loan documents on

10 June 19, 1997, she "put it away without inspecting it," and years passed before she inspected

11 what those documents contained. Id. Plaintiff's failure to inspect the documents, especially

12 in light of her signed acknowledgment, does not constitute "excusable ignorance of the

13 limitations period" justifying imposition of equitable tolling. Thus, this claim is barred by

14 the statute of limitations and is DISMISSED with prejudice.

15    **B.**    **Plaintiff's Second Federal Claim - Violation of the Real Estate Settlement
         Procedures Act**

16

17    In her fourth cause of action, Plaintiff alleges the following acts by WMC violated

18 the Real Estate Settlement Procedures Act ("RESPA"): "kickbacks, referral fees,

19 unnecessary escrow accounts for taxes and hazard insurance, improper or inaccurate

20 reporting to credit bureaus, failure to disclose the transfer of the servicing of Plaintiff's loan

21 account, failure to respond to acknowledge 'payments from a borrower' and to acknowledge

22 'making the payments of principal and interest as may be required pursuant to the terms of

23 the loan,' and other home mortgage lending practices that tend to cause excessive borrowing

24 costs for home loan borrowers." SAC ¶ 47. Plaintiff additionally alleges that WMC

25 violated RESPA "[b]eginning June 1999, through March 1, 2002" by failing to respond to

26 Plaintiff's oral requests and failing to acknowledge or respond to Plaintiff's qualified written

27 requests." SAC ¶ 21. Defendants respond that this claim is time barred.

28    The applicable statutes of limitations for claims brought pursuant to RESPA are

10

United States District Court
For the Northern District of California

found in 12 U.S.C. section 2614.  "Any action pursuant to the provisions of section 2605, 2607, or 2608 of this title may be brought in the United States district court within 3 years in the case of a violation of section 2605 of this title and 1 year in the case of a violation of section 2607 or 2608 of this title from the date of the occurrence of the violation."  *See* 12 U.S.C. §2614.

1.   Section 2607

Plaintiff's allegations of kickbacks and referral fees are covered under section 2607(a).[9]  By its terms, section 2607(a) prohibits the giving or receipt of fees or kickbacks "incident to or part of a real estate settlement service involving a federally related mortgage loan."  *See* 12 U.S.C. § 2607(a).  "Settlement services" is defined as any "service provided in connection with a real estate settlement."  *See* 12 U.S.C. § 2602(3).  No where in Plaintiff's SAC does she allege where, when, how or from whom WMC received kickbacks or referral fees.  Rather it is a bald assertion unsupported by facts.  The facts alleged by Plaintiff fail to demonstrate the inapplicability of the statute of limitations.  Plaintiff received her mortgage loan in June of 1997.  Section 2614 required her to bring her claim alleging kickbacks or referral fees within one year, by June of 1998.  This claim is time barred and is therefore DISMISSED with prejudice.

2.   Section 2605

The remaining RESPA allegations are subject to the 3-year statute of limitations as the conduct she alleges by WMC concerns "servicing of mortgage loans and administration of escrow accounts."  *See* 12 U.S.C. § 2605.[10]

---

[9]  This provision states: "No person shall give and no person shall accept any fee, kickback, or thing of value pursuant to any agreement or understanding, oral or otherwise, that business incident to or a part of a real estate settlement service involving a federally related mortgage loan shall be referred to any person."  12 U.S.C. § 2607(a).

[10]  The other statute referenced in section 2614, section 2608, is inapplicable to this case.  Section 2608 states: "No seller of property that will be purchased with the assistance of a federally related mortgage loan shall require directly or indirectly, as a condition to selling the property, that title insurance covering the property be purchased by the buyer from any particular title company."  Plaintiff's complaint does not involve the sale of her home or allegations that she was required to purchase title

11

United States District Court

For the Northern District of California

1    Plaintiff's allegations are inconsistent and insufficient to overcome the time bar for

2  several reasons. First, the latest date for which Plaintiff alleges violative conduct on the part

3  of WMC is April 11, 2000, over four years prior to the filing the instant complaint. Thus,

4  her claims are time-barred. Second, Plaintiff's loan was transferred to another entity for

5  servicing in July of 2000; Plaintiff does not explain, in her SAC or opposition, how WMC

6  violated RESPA through March 1, 2002, *after* the loan had been transferred. Third, RESPA

7  imposes obligations upon a party upon written requests, not oral. *See* 12 U.S.C. §

8  2605(e)(1)(B). The only qualified written request[11] Plaintiff asserts in her SAC occurred on

9  December 4, 1999, more than three years prior to the filing of the instant complaint. Fourth,

10  even assuming Plaintiff's delayed discovery of the transfer of her loan in September, 2003

11  was reasonable such that the doctrine of equitable tolling applied, Plaintiff learned of the

12  transfer ten months prior to the filing of this suit. *See Santa Maria v. Pac. Bell*, 202 F.3d

13  1170, 1178 (9th Cir. 2000) ("[E]quitable tolling will serve to extend the statute of limitations

14  for filing suit until the plaintiff can gather what information he needs.") Plaintiff does not

15  provide any justification for the delay between her discovery of the transfer, and the filing of

16  the instant complaint. Therefore, she has not proven she is entitled to invoke the doctrine of

17  equitable tolling.

18    For all these reasons, this claim is DISMISSED with prejudice.

19  **C.    Plaintiff's Third Federal Claim - Violation of the Fair Debt Collection Practices**
20       **Act**

21    In her fifth cause of action, Plaintiff alleges WMC's acts and conduct violated the

22  Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 *et seq.* SAC ¶ 51.

23  Plaintiff generally alleges all of the acts and conduct by WMC violate the FDCPA, including

24  insurance from a particular company.

25    [11] 12 U.S.C. 2605(e)(1)(B) states in relevant part: "For purposes of this subsection, a qualified
26  written request shall be a written correspondence, other than notice on a payment coupon or other
     payment medium supplied by the servicer, that (i) includes, or otherwise enables the servicer to identify,
27  the name and account of the borrower; and (ii) includes a statement of the reasons for the belief of the
     borrower, to the extent applicable, that the account is in error or provides sufficient detail to the servicer
28  regarding other information sought by the borrower."

United States District Court

For the Northern District of California

1  definition of debt collectors, "any officer or employee of a creditor while, *in the name of the*
2  *creditor*, collecting debts for such creditor." 15 U.S.C. § 1692a(6)(A) (emphasis added).
3  Because Plaintiff alleges activities by WMC regarding collection of payments owed to it
4  under the loan, i.e., it was WMC's debt it sought to recover from Plaintiff, WMC was not a
5  "debt collector" for purposes of the FDCPA. Thus, Plaintiff has no cognizable claim against
6  WMC on this ground.

7        For these reasons, this claim is DISMISSED with prejudice.

8  **D.**    **Supplemental State Causes of Action**

9        When a case is properly removed on the basis of federal question jurisdiction, but the
10  federal claims are subsequently eliminated from the case, the district court retains the
11  discretion to remand the action to state court. *See Carnegie-Mellon Univ. v. Cahill*, 484
12  U.S. 343, 348 (9th Cir. 1991). In each case, and at every stage of the litigation, the federal
13  court must consider and weigh the values of judicial economy, convenience, fairness, and
14  comity in order to decide whether to exercise jurisdiction over a case involving pendent
15  state-law claims. *Id.* at 349. When the balance of the relevant factors indicates that a case
16  properly belongs in state court, such as when the federal claims have been resolved in the
17  early stages of the litigation, the district court may decline the exercise of jurisdiction and
18  remand the action to state court. *Id.* As the United States Supreme Court recognized in
19  *United Mine Workers v. Gibbs*, 383 U.S. 715, 726 (1966), the district court's jurisdiction
20  over state law claims "need not be exercised in every case in which it is found to exist . . . .
21  Needless decisions of state law should be avoided as a matter of comity[.]" *Id.*

22        Plaintiff's third, fourth and fifth claims are the only claims alleged over which the
23  Court has original jurisdiction. Those claims have been dismissed with prejudice.
24  Moreover, since this litigation is in its initial stage, the concerns of "economy, convenience,
25  fairness and comity" weigh in favor of declining to retain jurisdiction. *See Imagineering,*
26  *Inc. v. Kiewit Pacific Co.*, 976 F.2d 1303, 1309 (9th Cir. 1992), *cert. denied*, 507 U.S. 1004
27  (1993). Therefore, the Court exercises its discretion and declines to assert supplemental
28  jurisdiction over the remaining state law claims.

1    "the improper or inaccurate reports to credit borrowers" by WMC.[12] *Id.* Here, again, WMC

2    responds that Plaintiff's claim is time-barred. Additionally, even if the claim were not time-

3    barred, WMC argues it is misplaced since the FDCPA only prohibits certain activities of

4    debt collectors, not creditors such as WMC.

5           1.    Statute of Limitations

6          "An action to enforce any liability created by this subchapter may be brought in any

7    appropriate United States district court without regard to the amount in controversy, or in

8    any other court of competent jurisdiction, within one year from the date on which the

9    violation occurs." 15 U.S.C. § 1692k(d). As with her other allegations, Plaintiff merely

10    asserts that the violations giving rise to the claim "continue through the present time." SAC

11    ¶ 51. She does not offer any evidence of the nature of the acts of WMC which form the

12    basis of the assertion, nor when they occurred. Moreover, given WMC's transfer of the

13    servicing of Plaintiff's loan to another party in 2000, the Court is unaware of any facts

14    Plaintiff could allege that would fall within the year prior to her filing the instant complaint.

15           2.    FDCPA Applies Only to "Debt *Collectors*"

16          Alternatively, WMC argues that even were this cause of action not time barred by the

17    statute of limitations, Plaintiff's claim still fails as the FDCPA is inapplicable to parties

18    collecting their own debt.

19          The FDCPA regulates debt collectors rather than creditors. *Thomas v. Law Firm of*

20    *Simpson & Cyback*, 392 F.3d 914, 916-17 (7th Cir. 2004). The term "debt collector" means

21    any person who "regularly collects or attempts to collect, directly or indirectly, debts owed

22    or due or asserted to be owed or due to *another*." 15 U.S.C. § 1692a(6) (emphasis added).

23    The term "creditor" means "any person who offers or extends credit creating a debt or to

24    whom a debt is owed . . . ." 15 U.S.C. 1692a(4). Furthermore, the FDCPA exempts from its

25     

26        [12] Plaintiff references 12 U.S.C. § 2605(3)(d) with respect to her allegation of "improper or
inaccurate reports to credit borrowers." SAC ¶ 51. There is no 12 U.S.C. § 2605(3)(d). In this same

27    paragraph of the SAC, Plaintiff asserts a "loan servicer may not provide information regarding any
overdue payment to any consumer reporting agency." *Id.* The SAC does not allege when, to whom, nor

28    what information WMC provided to any consumer reporting agency regarding any overdue payments.
Thus the SAC is completely devoid of facts to support these allegations.

**CONCLUSION**

For the reasons stated above,

IT IS HEREBY ORDERED THAT Defendants' motion to dismiss is GRANTED. Plaintiff's third, fourth and fifth claims are DISMISSED WITH PREJUDICE.

IT IS FURTHER ORDERED THAT the case is REMANDED to the Superior Court of the State of California in and for the County of San Francisco. The clerk is directed to terminate any pending matters and to close the file.

IT IS SO ORDERED

IT IS SO ORDERED.

Dated: 1-19-06

SAUNDRA BROWN ARMSTRONG
United States District Judge

15

UNITED STATES DISTRICT COURT

FOR THE

NORTHERN DISTRICT OF CALIFORNIA


Barbera,

          Plaintiff,

   v.

WMC Mortgage Corp. et al,

          Defendant.

Case Number: CV04-03738 SBA

**CERTIFICATE OF SERVICE**

I, the undersigned, hereby certify that I am an employee in the Office of the Clerk, U.S. District Court, Northern District of California.

That on January 19, 2006, I SERVED a true and correct copy(ies) of the attached, by placing said copy(ies) in a postage paid envelope addressed to the person(s) hereinafter listed, by depositing said envelope in the U.S. Mail, or by placing said copy(ies) into an inter-office delivery receptacle located in the Clerk's office.

Andrew R. Louis
Goodwin Proctor LLP
901 New York Avenue
NW
Washington, DC 20001

Daniel A. Gamer
55 Professional Center Parkway #H
San Rafael, CA 94903-2729

John G. Warner
Law Office of John G. Warner
21 Tamal Vista Boulevard
Suite 196
Corte Madera, CA 94925

Michael J. Agoglia
Morrison & Foerster LLP
425 Market Street
San Francisco, CA 94105-2482

Patricia C. Barbera
24 Caribe Isle
Novato, CA 94949

Theodore A. Griffinger
Stein & Lubin
600 Montgomery Street
14th Floor
San Francisco, CA 94111


Dated: January 19, 2006

Richard W. Wieking, Clerk
By: LISA R CLARK, Deputy Clerk

2